In re ROSENTHAL & LEHMAN.

(District Court, E. D. Missouri, E. D.    November 29, 1902.)

1. BANKRUPTCY—ATTORNEY FOR BANKRUPT—FEES—ALLOWANCE.

Under Bankr. Act, § 64b [U. S. Comp. St. 1901, p. 3447], providing that one reasonable attorney's fee for professional services rendered to the bankrupt in involuntary cases, as the court may allow, shall have priority, and be paid in full from the bankrupt's estate, the court may allow an attorney for the bankrupt in an involuntary proceeding for services actually rendered in good faith for the real purpose of impartially administering the estate.

2. SAME—NECESSITY—GOOD FAITH—PROOF.

Where, in a proceeding for the allowance of attorney's fees to involuntary bankrupts for representing them at their examination before the referee, and for being present and acting as counsel for them through such examination, there was no proof that the employment of counsel was reasonably necessary, and that the services were actually rendered in good faith to promote the purposes of the bankruptcy act, the claim should be disallowed.

In Bankruptcy.

Sale & Sale, for trustee.

Solomon S. Swarts, for bankrupts.

ADAMS, District Judge. This record certified to me by the referee raises the question whether a fee should be allowed to attorneys of bankrupts for attending them on the occasion of their examination before the referee. Section 64b of the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3447] is as follows:

"The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases while performing the duties herein prescribed and to the bankrupt in voluntary cases, as the court may allow. * * *"

This is an involuntary case, and therefore one reasonable attorney's fee, such as the court may allow for professional services actually rendered to the bankrupt while performing the duties prescribed by the act, should be included in and paid out of the estate as a part of the cost of administration.

By the provisions of section 7 of the act [U. S. Comp. St. 1901, p. 3425] it is made the duty of the bankrupt in all cases to attend the first meeting of creditors, if directed by the court so to do; and when there, and at such other times as the court may order, "to submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and in addition all matters which may affect the administration and settlement of his estate." The same section imposes other duties upon the bankrupt, some of which (like preparing schedules of property and list of cred-

itors) from their nature justify and require the aid of professional counsel; while others (like complying with specific orders of court, or informing the trustee of any attempt known to him of creditors or other persons to evade the provisions of the act), from their essential nature, do not require, and would not justify, the employment of professional counsel to aid the bankrupt in their performance. And there are still other duties of the bankrupt (like attending the hearing upon his application for discharge from his debts) which may or may not require the aid of professional counsel in their performance.

From these observations, as well as from the language employed in section 64b [U. S. Comp. St. 1901, p. 3447], it seems clear that Congress did not intend by the provisions of the last-mentioned section to lay down a fixed rule authorizing a bankrupt to employ, at the expense of the estate, counsel to attend him in the performance of every duty prescribed by the act. Only such a reasonable attorney's fee as the court may allow in each individual case, and only such professional aid as the nature, exigency, and difficulty of the duty to be performed in each individual case reasonably require, seem to have been within the contemplation of Congress, as shown by a consideration of all the provisions of both sections in question.

The test laid down in some cases, and which was applied by the referee in this case, is that legal services in aid of the administration of the estate should be paid for out of the funds of the estate, while those for the personal benefit or protection of the bankrupt should not be so paid. This may or may not be a correct test, but the difficulty arises in determining what services are purely personal, as distinguished from those which are incidental to the administration of the estate under the bankruptcy act. The act of 1898 [U. S. Comp. St. 1901, p. 3418], like its predecessors, has, broadly speaking, two fundamental purposes—one to relieve an honest debtor from the incubus of overwhelming debt, and restore him to the activities of business life; another is to make a just and equitable distribution of the bankrupt's estate among his creditors. The true administration of an estate in bankruptcy is concerned as much with securing a discharge to the debtor as with the distribution of his assets, and to that end it is frequently essential for the bankrupt to make a full showing with relation to his property and business methods. He is ordered to appear before the referee for an examination touching "the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and in addition all matters which may affect the administration and settlement of his estate." The scope of this examination may, and frequently does, involve inquiries relative to the existence and whereabouts of property, and also relative to matters about which the bankrupt has made oath, and other matters which, by section 14b [U. S. Comp. St. 1901, p. 3427], preclude discharge. Obviously, the personal benefit and protection of the bankrupt at such an examination is involved, and so, also, the accomplishment of one of the main purposes of the act—to secure the discharge of an honest debtor—is involved. Thus it appears that what is for the

personal benefit and protection of the bankrupt may also be of commanding importance in the just and impartial administration of the bankruptcy law.

It goes without saying that, if the services of counsel are secured, or, when secured, are employed for the purpose of screening the bankrupt from the consequences of his own wrongful conduct, or for the purpose of suppressing the truth, or otherwise thwarting the operation of the act, no compensation can reasonably be allowed by the court to be paid out of the assets of the estate. The test, in my opinion, is whether the employment is necessarily made, and the services necessarily rendered in good faith for the real purpose of so administering the act in a given case as to accomplish the purposes of its enactment. If the employment is reasonably necessary to aid either in the discovery of assets, or securing the bankrupt's discharge, or protecting the bankrupt from unjust charges or imputations of wrong, such as would subject him to the penalties of the act, a reasonable allowance should be made therefor. If, on the other hand, there is no reasonable necessity for the employment for either of the foregoing purposes, or if the employment is not in good faith to protect an innocent debtor in the assertion of his right under the act, then no allowance should be made therefor. And when an allowance is made it should be remembered that the policy of the law, as disclosed in the compensation fixed for referees, clerks, and trustees, is in the direction of great economy.

Attention is called in argument to the abuse that may be practiced under a construction of the act like that now given it. It is claimed that any bankrupt may employ counsel to attend him upon his examination or in the discharge of any other duty prescribed by the act, but such employment does not in and of itself secure compensation out of the estate. Several additional facts must be found before such compensation is allowed. As already indicated, it must appear to the court that employment of counsel in a given case is reasonably necessary, and it must also appear that the services were secured and actually rendered in good faith to promote the purposes of the act. As already indicated, it is believed that a careful and attentive consideration of the circumstances attending the employment of counsel and rendering of services by them in each individual case will enable the court to reach a just conclusion, and do so in such way and manner as not to encourage the employment of useless and unworthy services.

Applying the principles already announced to the case now before the court, the conclusion reached by the referee must be sustained, because the certificate of facts recites merely that the claimants were employed by the bankrupts to represent them at their examination before the referee, and that they were present and acted as counsel for the bankrupts throughout the examination. The mere fact of employment and attendance upon the bankrupts does not conclude the inquiry.

For the reason that it does not appear that the services of claimants in this case were necessary, or rendered in good faith to promote the purposes of the bankruptcy act, the conclusion of the referee must be sustained, and the claim disallowed.