In re **CITY PLANNERS & DEVELOPERS, INC., Debtor.**

**Bankruptcy No. B–79–000343 (B).**

United States Bankruptcy Court,
D. Puerto Rico.

July 9, 1980.

As Amended Aug. 11, 1980.

O'Neill & Borges, Hato Rey, P. R., for creditors' committee.

Fiddler, González & Rodríguez, San Juan, P. R., for debtor.

## ORDER ALLOWING PROFESSIONAL FEES

W. H. BECKERLEG, Bankruptcy Judge.

The firm of O'Neill & Borges, having been duly appointed counsel to the Creditors' Committee herein, has filed for allowance of interim-final professional fees for the services rendered. The debtor has objected to the amount claimed and requested that the Court reduce same. Both applications and objections are detailed, and after notice the parties were heard on June 9, 1980.

The applications are supported by a breakdown of the hours worked by various professionals and para-legals of the firm of O'Neill & Borges to which various hourly billing rates have been assigned; we thus have a bill for hours worked multiplied by hourly rates. Also included in the application is a request for reimbursement of certain expenses.

These are Chapter 11 proceedings, and under Chapter 11 a creditors' committee is required, # 1102(a), and the committee may select and employ attorneys, # 1103(a).

Sec. 328(a) provides that the employment of a professional person, such as an attorney, may be "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." The same section authorizes the court to allow compensation other than that agreed upon in the light of developments unanticipatable.

Sec. 330(a) provides that the court may award to an attorney

"(1) reasonable compensation for actual, necessary services rendered by such . . . attorney . . . and by any paraprofessional persons employed . . . based on the time, the nature, the extent, and the value of such service, and the cost of comparable services other than in a case under this title; and

"(2) reimbursement for actual, necessary expenses."

According to the House Report on Sec. 330, the effect of the above language is to overrule *In re Beverly Crest Convalescent Hospital, Inc.*, (CCA–9, 1976) 548 F.2d 817 which set an arbitrary limit on fees payable based on the district judge's salary and other similar cases that require fees to be determined based upon notions of conservation of the estate and economy of administration.

Needless to say, the bar has welcomed the language and policy of Sec. 330(a) and the related sections of the new Bankruptcy Code.

■ What are "comparable services", what is "reasonable compensation", and what are "necessary expenses"? The history of and the commentators on this provision clearly indicate Congress wished to attract to and retain in the bankruptcy field competent professional services, and to this worthwhile end the Congressional intent is reflected in these phrases which imply a more generous approach to professional compensation. At the same time, however, Congress hedged this liberality by empowering and requiring the courts to review applications for compensation, and, if appropriate, to deny same or change the terms. This appears to be no great change from the law prior to the Bankruptcy Reform Act of 1978, and Collier so notes:

"The only significant departure from prior law with respect to the factors involved in determining a reasonable compensation is the abandonment of the

strict principle of economy. In other respects, the criteria are the same and prior case law remains relevant."—2 *Collier on Bankruptcy*, 15th Ed., # 330.05(2)(a).

Congress has not changed, therefore, the task of the Bankruptcy Judge in any great degree when it comes to fixing professional fees, except that the court need no longer feel restrained for reasons of economy. The court must still determine what is reasonable, what is necessary, and one of the factors it may use is the cost of comparable services.

Counsel has adequately informed us herein as to time, and nature of the services rendered. We have not been provided with information on comparable services. We now direct ourselves to that question.

■ Sec. 330(a) speaks of "comparable services other than in a case under this title." It is noteworthy that the statute requires us to compare *services*.

■ "Service" means work done for others, and "comparable" means similar or equivalent; the statute prohibits us from considering similar bankruptcy work, so we must consider similar work in non-bankruptcy fields. Bankruptcy professional services include office consultations, legal research, court appearances in both contested and uncontested matters, preparation of pleadings and other legal papers, and, in fact, all those tasks that the average general practitioner is called upon to perform each day. The bankruptcy field is not one in which most attorneys labor, but this, we believe, is due more to the limited amount of work rather than to the complexity of the law.

■ Although applicant firm's hourly billing rates are apparently the same irrespective of the nature of the legal services, we resist the temptation to find that because applicant charges the same for comparable services in the non-bankruptcy field, that, ipso facto, their rates are proper in bankruptcy cases. The scope of the inquiry as to comparable rates must, in our opinion, be less provincial and must take into consideration the billing practice in the entire legal community.

Debtor is also represented by one of the top legal firms of this community, and we would be the first to hold that the creditors' committee is entitled to legal services of the same quality as debtor; but this does not require us to use the billing rate of debtor's firm as the final answer to the cost of comparable services; we will have to pass also upon the fees charged to the debtor and will have to utilize the same criteria.

We have reviewed the objections to this application. These indicate the possibility of billings for services not rendered, duplications, improper items, and inadequate work descriptions. As a purely theoretical issue, we agree with debtor that the breakdown of services has defects and that these are to debtor's disadvantage. However, the Court is aware that time and record keeping are chores that most lawyers dislike and do not always perform well. The court is intimately aware of most of the services rendered, and can project the collateral services required not personally known to the Court; we feel therefore, that we need not enter into the objections in detail. We find the applicant's time records substantially reflect the work performed and that there is no substantial error detrimental to debtor.

■ As to the objections to disbursements claimed by applicant, we agree with debtor that charges for secretarial overtime and for outside messenger services are not proper charges and we disallow them, thus reducing the amount allowed for expenses to $34.24 on the preliminary application plus $192.25 on the supplementary final allowance application.

■ As to the compensation, not having been provided with evidence by the parties, we resort to our own experience and knowledge of the profession in this community and we find that the cost of comparable services for the partners to be $70.00 the hour, for the associate $40.00 the hour, and for the para-legals $25.00 the hour. In summary then:

| | | | |
|---|---|---|---|
| Partner | 267.90 hrs. | (a) $70.00 | $18,753.00 |
| Associate | 47.50 hrs. | (a) $40.00 | 1,900.00 |
| Para-legal | 11.50 hrs. | (a) $25.00 | 330.00 |
| | TOTAL ALLOWANCE:— | | $20,983.00 |

Compensation for legal services by the firm of O'Neill & Borges as attorneys for the creditors' committee in the amount of $20,983.00 is hereby approved, and the debtor is directed to pay same forthwith.

Debtor is also directed to reimburse applicant for $226.49 of expenses.