**In re Earl Bruce EPSTEIN and Penelope Wells Epstein, Debtors.**

**Bankruptcy No. 7–83–00213 R S.**

United States Bankruptcy Court,
D. New Mexico.

June 11, 1984.

Daniel J. Behles, Albuquerque, N.M., for debtors.

Robert N. Hilgendorf, Santa Fe, N.M., trustee.

## MEMORANDUM OPINION

STEWART ROSE, Bankruptcy Judge.

This Application for Fees, filed by the Debtors' attorney and opposed by the Trustee, raises for the first time in this District the question of whether fees and expenses incurred by a Chapter 7 Debtor while defending a Complaint for Determination of the Dischargeability of a Debt are payable from the estate as an administrative expense.

The Debtors, Bruce and Penelope Epstein, filed a Chapter 7 petition February 23, 1983. Their schedules listed $311,-842.30 of debt and $105,610.00 in property. On May 13, 1983, creditors Richard and Patricia Hataoka filed a dischargeability action, alleging that at least $275,000.00 of the debt was non-dischargeable by virtue of the Epsteins' use of false pretenses, false representations and actual fraud, and further requested punitive damages of $1,000,000.00. The adversary proceeding is currently in the discovery phase.

On February 22, 1984, the Debtors' attorney filed an Amended First Application for Fees, requesting approval of fees totalling $11,284.32. These fees were generated in part through the attorney's representation of the Debtors in a related bankruptcy proceeding in California, for which the Debtors had already paid. The remaining balance of $5,134.32, attributable to the New Mexico bankruptcy, was requested as a priority claim. Of the $5,134.32, the Debtors' attorney represents that $2,344.63 are fees generated by what might be considered core bankruptcy matters, and $2,789.69 was generated by the dischargeability action. The Trustee objected, claiming the fees were excessive and that fees incurred defending the dischargeability action were not properly payable by the estate.

Under the Bankruptcy Act, there was a split of authority as to whether fees and expenses incurred defending dischargeability actions were payable from the estate. Some courts, reasoning from dicta in *Conrad, Rubin & Lesser v. Pender*, 289 U.S.

472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933) at 476, to the effect that professional services rendered in the carrying out of the provisions of the Act were compensable from the estate, and best exemplified by *In the Matter of Gray*, 7 C.B.C. 571 (1975), have ruled that protecting the debtor's fresh start is carrying out the provisions of the Act, and so may be paid from the estate. Other courts have flatly ruled that attorney's fees incurred defending actions relating to discharge are not payable from the estate, *In the Matter of Jones*, 665 F.2d 60 (5th Cir., 1982), *In Re Rothman*, 85 F.2d 51 (2nd Cir., 1936). This is the rule in the Tenth Circuit. *Lewis v. Fitzgerald*, 295 F.2d 877 (10th Cir., 1961).

The Act provision, 11 U.S.C. § 104(a), repealed October 1, 1979, allowed priority payment from the estate for:

(1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; ... and one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, to the bankrupt in voluntary and involuntary cases ...

This has been interpreted to mean that "attorney's fees are allowed only to compensate for professional services rendered in connection with the preservation of the estate," *Jones, supra*.

The equivalent Code provision, 11 U.S.C. § 503(b) provides that claims will be allowed as an administrative expense, and will therefore under 11 U.S.C. § 507(a)(1) have first priority for payment, for:

(1)(A) the actual, necessary costs and expenses of preserving the estate ...

(3) compensation and reimbursement awarded under Section 330 of this title ...

Section 330 awards to the debtor's attorney "reasonable compensation for actual, necessary expenses."

The legislative history is essentially silent as to any Congressional intent to effect a change in the law, noting only that Code § 503 is derived mainly from Act § 64(a)(1), with some case law incorporated [1], H.R. No. 95–595, 95th Cong., 1st Sess. 355 (1977); S.R. No. 95–989, 95th Cong., 2nd Sess. 66 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 and that "Notions of the economy of the estate in fixing fees are outdated and have no place in bankruptcy code," 124 Cong.Rec. H 11091–2 (Sept. 28, 1978); S 17,408 (Oct. 6, 1978). Given this, and the structural similarity of the provisions, it does not appear that Congress intended any further departure from the law under the Act. Indeed, courts examining fee applications under the Code have determined that the Act provisions relating to fees are still in effect, with the exception of economy, *In the Matter of Hamilton Hardware Co., Inc.*, 11 B.R. 326, 7 B.C.D. 963 (1981), *In re City Planners & Developers, Inc.*, 5 B.R. 217, 2 C.B.C.2d 700 (1980). Collier notes:

"The weight of authority under the Act was in favor of limiting compensability to services rendered in assisting debtors in performing their legal duties rather than exercising their legal privileges ... The Code makes no change in this regard. Services of a debtor's attorney which were compensable under the Act, should be entitled to compensation under § 330."

2 Collier on Bankruptcy, ¶ 330.04(3) (15th ed., 1984). It appears that the converse of Collier's statement is also true. The only Code case on point this Court has been able to locate, *In the Matter of Sawicki*, 12 B.R. 515 (1981), reached the same result, denying a similar application.

Congress was not completely unmindful of the possibility of an overbearing creditor bringing in bad faith a dischargeability action in hopes of forcing a settlement on a debtor unwilling or unable to afford adequate representation. In consumer cases, Section 523(d) mandates granting judgment for costs and attorneys fees, against a creditor that unsuccessfully prosecutes a dischargeability action unless it would be clearly inequitable. This section did not exist under the Act, H.R. No. 95–595, 95th

---

**1.** The incorporated case law is not relevant to this discussion.

Cong., 1st Sess. 365 (1977), and represents a limited exception to the rule that debtors bear their own expenses while attempting to obtain a discharge. Commercial debtors are not so fortunate, and must rely instead on Bankruptcy Rule 9011 or on the Court's equitable powers for the recovery of attorney fees resulting from a bad-faith complaint, *Banker's Trust Company v. Lichstrahl,* (In re Lichstrahl) 27 B.R. 733 (1983); *Grove v. Fulwiler* (In re Fulwiler) 624 F.2d 908 (9th Cir., 1980) (Act Case); *Rainey v. Warren* (In the Matter of Warren) 7 B.R. 546 (1980).

The goal of all bankruptcy legislation is to achieve a just and equitable distribution of the estate to the creditors and to relieve the honest debtor of his debts, giving him a fresh start, *Lewis v. Fitzgerald, supra, In re Rosenthal & Lehman,* 120 F. 848 (1902), Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. I (1973) at 75. Paying from the estate the attorneys fees of a dishonest debtor, or one whose honesty is legitimately open to question unnecessarily favors the fresh start over the distribution to creditors. Every dollar paid administratively is a dollar less paid to the general creditors. The creditors are already financing the debtor's fresh start through their loss; it hardly seems equitable for them to finance the debtor's attempt to prove he is worthy of discharge. As the Court in *Rosenthal, supra,* said at 850:

> It goes without saying that, if the services of counsel are secured, or when secured, are employed for the purpose of screening the bankrupt from the consequences of his own wrongful conduct, or for the purposes of supressing the truth, or otherwise thwarting the operation of the act, no compensation can reasonably be allowed by the court to be paid out of the assets of the estate.

For these reasons, this Court does not feel the rationale permitting payment from the estate is expressed by *Gray, supra,* and its ilk is persuasive. If the debtor has conducted himself in a forthrightly honest fashion, sanctions may be imposed against those impugning his honesty. But where the debtor's honesty is in legitimate question, it is up to the debtor to show that he is as honorable as the Code requires. All should consider in the course of their day-to-day activities that operating in the grey areas might one day prove costly.

Therefore, the Debtors, and not the estate, shall bear the cost of defending the debtors' discharge. An appropriate Order will follow.