**In re Thomas Eugene STORMS, Individually and dba Storms and Company; and dba Tommy's Old Timers, Debtor.**

**No. 86–03778–LM11.**

United States Bankruptcy Court, S.D. California.

June 26, 1989.

Stephen D. Petach, Escondido, Cal., for debtor.

Gerald N. Sims, Jennings, Engstrand & Henrikson, San Diego, Cal., for disbursing agent and movant.

Susan Mosley, Luce, Forward, San Diego, Cal., for receiver.

Michael Y. MacKinnon, Hill and Baskin, San Diego, Cal., for Patricia Storms.

## AMENDED MEMORANDUM OF DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Stephen D. Petach, counsel for Thomas Eugene Storms, debtor, has made a second application for interim allowance of attorneys fees, requesting $39,200.50 in fees, plus $1,291.89 in costs. This sum represents legal fees and costs for representing the debtor from March 15, 1988, through September 30, 1988. Objections have been filed by Patricia A. Storms, ex-wife, creditor and successful Chapter 11 plan proponent in this case. She is joined by creditor Joe E. Coleman.

### I.

### SUMMARY

Thomas E. Storms filed his Chapter 11 case after losing a state court action for fraud brought by Dr. A. John Anlyan. He appealed the state court judgment which awarded Anlyan $1,450,000 in general and punitive damages. When Patricia E. Storms, his estranged spouse, refused to cooperate in posting community property as a surety bond for a stay pending appeal, his Chapter 11 case was filed. At all times during the Chapter 11 confirmation process, it has appeared that Storms' Chapter 11 case is solvent—that is, there are sufficient assets to pay creditors' claims, including the Anlyan judgment, in full.

In March 1988, this Court denied confirmation of the debtor's proposed plan of reorganization after lengthy hearings during which Patricia Storms and Dr. Anlyan appeared in opposition. Thomas Storms' plan was to pay all creditors in full except Dr. Anlyan, appeal the Anlyan judgment through the state courts to obtain reversal and relitigate the Anlyan matter. Confirmation was denied because his plan refused to guaranty Patricia Storms 50 percent of that which she would have received had the Anlyan judgment been paid upon confirmation, regardless of the outcome after appeal.

Patricia Storms then proposed her own plan of reorganization. On March 17, 1988, this Court approved her first amended disclosure statement; a confirmation hearing was held May 9, 1988. Patricia Storms' plan provided simply for payment of all creditors in full, including Anlyan's claim at a discount, compulsory dismissal of the Anlyan appeal and remand to the state court of the question of division between the parties of the remaining community property. It was supported by Anlyan. Over Thomas Storms' vigorous objections, this Court confirmed Patricia Storms' plan.

Objections to Petach's fee application raise the question of whether he should be compensated from the estate for services opposing confirmation of Patricia Storms' plan, and for post-confirmation services which served to delay or thwart implementation of the plan.

### II.

### ISSUE

Whether counsel to a Chapter 11 debtor can be compensated for services which benefit only the debtor and not the estate.

### III.

### DISCUSSION

Section 330(a)(1) provides that debtor's counsel may receive reasonable compensation for actual and necessary services rendered to the debtor. There is a near unanimous view that debtor's counsel may recov-

er fees from an estate only if their labors actually benefit the estate. Although there is a plethora of cases so holding in a Chapter 7 context,[1] there has been less frequent discussion of this requirement in a Chapter 11 setting.

In the *Matter of Global International Airways Corp.*, 82 B.R. 520, 17 BCD 120 (Bankr.W.D.Mo.1988), the court disallowed fees requested by counsel for the Chapter 11 debtor where they had opposed efforts by the special counsel (appointed at the behest of the creditors' committee) to recover preferential transfers to the debtor's officers. Special counsel's effort succeeded in recovering funds which turned out to be the almost sole source for payment of administrative expenses. When debtor's counsel then sought to be paid from the recovery, the court was understandably apoplectic:

> The monies which were resultingly paid by Farhad Azima into the estate now compose the principal quantum of that estate from which applicant counsel propose to recapture their attorney's fee. In essence, then, they expect to be paid from the settlement fund produced by the special counsel whose appointment they opposed.
>
> It is precisely under such circumstances that the law's requirement that debtor's counsel be compensated from the estate only reasonable amounts attributable to services rendered "in aid of administration" thereof has special application. Under this rubric, an unbroken chain of authority holds that services rendered for the benefit of a debtor only, and contrary to the interest of the estate, such as opposing the issuance of a turnover order, cannot be compensated from the estate. [citation omitted] *Id.* at 522.

When this Court last addressed the issue in a Chapter 11 context, it was for the purpose of denying interim compensation to debtor's counsel for services defending a non-dischargeability suit brought pre-confirmation. *In re Weingarden*, 84 B.R. 691

(Bankr.S.D.Cal.1988). In so holding, I recognized the possibility that such services rendered by debtor's counsel might be compensable but only if the defense eliminated the claim entirely or resulted in an increase of the amount distributed to general unsecured creditors under the plan:

> Even then, such fees should probably be tested by a "cost-benefit analysis" to determine whether the fees generated by the defense were reasonable when compared to the benefit conferred upon general unsecured creditors. *Id.* at 693.

Compensating Petach for his unsuccessful, but nevertheless vigorous attempts to defeat confirmation of Patricia Storms' plan raises the question of how his opposition benefited creditors. Patricia Storms' plan proposed a 100 percent pay-off to all creditors, including Anlyan. At no time was the question of maximizing distribution to creditors at issue. Rather, Petach's opposition to her plan was essentially a fight over the size of the pie, which would be divided between the debtor and his ex-wife—a co-owner of the community—after creditors had been paid.

In defending his actions to defeat Patricia Storms' plan, Mr. Petach says that his services were not undertaken to thwart payment of legitimate creditors, but to preserve the debtor's ...:

> [G]ood-faith belief that a determination of the pending State Court Appeal in the Anlyan v. Storms litigation would enhance the value of the estate by including, as assets, the cash funds held by the Estate Court Receiver, a reduction in the Anlyan Judgment, and potentially a valuable piece of real property, consisting of the office building in Los Angeles which the Superior Court awarded to Dr. Anlyan. To the extent that the debtor would have been successful in these endeavors, the assets of the estate would be greatly enhanced. (Response to Objection filed Nov. 9, 1988, p. 6).

---

1. *In re Jones*, 665 F.2d 60 (5th Cir.1982); *In re Ezell*, 45 B.R. 13 (Bankr.M.D.Tenn.1984); *In re Epstein*, 39 B.R. 938, 11 BCD 1280 (Bankr.N. Mex.1984); *In re Sawicki*, 12 B.R. 515, 8 BCD 2 (Bankr.W.D.Wis.1981); *In re Zweig*, 35 B.R. 37 (Bankr.N.D.Ga.1983); *In re Cleveland*, 80 B.R. 204 (Bankr.S.D.Cal.1987); *In re Leff*, 88 B.R. 105 (Bankr.N.D.Tex.1988).

The problem with this argument is that it ignores the fact that although the value of assets might have increased had Storms been successful, this would not have translated into any benefit for creditors. At all relevant times, creditors of this debtor would have received no more (nor less) than 100 cents on the dollar.

Perhaps an argument could be made that services resulting in recovery of additional assets over the amount needed to pay creditors should be compensated if, in fact, they aid the ongoing business operations of a reorganized debtor. However, in this case, Mr. Storms is a real estate broker employed by a non-debtor corporation, and the assets being applied to repayment of creditors are essentially personal. There has been no argument made that reorganization of Thomas Storms as a "business" would be enhanced by the actions taken by Petach. Further, based on the evidence to date, such an argument would have to be viewed with extreme skepticism.

Therefore, by no stretch of the imagination, could Petach's opposition have benefited creditors. At all times, under Patricia Storms' plan, creditors would have received 100 percent and Thomas Storms never proposed to pay them more. While the debtor has every right to have his personal interests represented, this Court concludes that it cannot be at the expense of the estate (which, incidentally, would be at the expense of his ex-wife).

Accordingly, this Court will disallow Mr. Petach's compensation for all services opposing confirmation of the plan of reorganization proposed by Patricia Storms, including and pre- and post-confirmation activities. This determination is not meant to affect recovery from Mr. Storms out of his portion of the community property as finally determined by the dissolution court. It is more appropriate that since such services benefited only the debtor, they be paid for by only the debtor.

Turning to the specifics of the fee application, the Court has reviewed each line item of the application to determine whether the services rendered benefited the estate. In cases where multiple services were "lumped" so that it is impossible to segregate services benefiting the estate from services benefiting the debtor, the Court has characterized all services as benefiting only the debtor. In so doing, I find that services totaling $27,230 should be deducted from Mr. Petach's fee request for the reason that no benefit to the estate and its creditors is shown. I have annotated "Exhibit A" (the detailed description of legal services) of Mr. Petach's Amended Second Application for Interim Compensation to indicate which services are in that category. They will be directed to counsel under cover of separate pleading.

Further, costs of $409.86 will be deducted for failure of counsel to itemize and substantiate the charges; costs of $207.60 will be deducted as costs expended for the sole benefit of the debtor. After making these adjustments, the remaining fees of $11,970.50 and costs of $677.43 are to be paid from the estate. A credit of $5,913 shall be taken against this award to reflect this Court's earlier temporary allowance (Order entered March 7, 1989). Counsel for objector Patricia Storms is directed to prepare an order in accordance with this Memorandum Decision within ten (10) days of its entry.