**In re J. Montieth ESTES, Debtor.**

**Bankruptcy No. 91–20185.**

United States Bankruptcy Court,
W.D. New York.

March 30, 1993.

---

Louis A. Ryen, Rochester, NY, for the debtor.

Warren H. Heilbronner, Chapter 7 Trustee, Rochester, NY.

## DECISION AND ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

## BACKGROUND

By application dated December 16, 1992, the attorney for the debtor requested an allowance of $7,443.25 in this asset Chapter 7 case for legal services rendered and $28.41 for disbursements incurred. The Rule 2016 disclosure statement filed by the attorney with the debtor's petition in 1991 estimated that legal fees of $3,000 would be incurred. At that time the Court required an affidavit of services since the estimated fees exceeded the fee customarily charged in this District for an individual Chapter 7 case. In response to the Court's request, the attorney filed an affidavit of services through March 19, 1991 with attached timesheets which showed legal services rendered of $1,965. The attorney stated that he had received a retainer of $1,120 from which the required $120 filing fee was paid and requested that no allowance be granted until the conclusion of the case.

The Chapter 7 trustee responded to the December 16, 1992 fee application stating that, since he had had no meaningful contact with the debtor's attorney after April 1991, he was "puzzled" as to how time expended by the attorney after March 1991 could have benefitted the bankruptcy estate. The Trustee noted that he was aware that the attorney had submitted an affidavit of services through March 19, 1991; he had not reviewed the present application, since he had not received a copy of it; and he requested that the Court review the attorney's entire application carefully to determine which services benefitted the estate and which did not.

The services rendered by the attorney between April 2, 1991 and December 1, 1992 were almost exclusively in connection with an adversary proceeding brought by a secured creditor against the debtor objecting to his discharge under Section 727 of the Bankruptcy Code. As to the services rendered before April 1991, some of them were in connection with the Debtor's reaffirmation of certain debts. The principal issues to be determined in connection with the pending application are whether the legal fees incurred in defending an adversary proceeding objecting to a debtor's discharge and for reaffirming certain debts are recoverable from the estate in a Chapter 7 case.

11 U.S.C. § 330 of the Bankruptcy Code supports the entitlement to reasonable fees if the attorney's services were necessary. However, the majority of the courts have imposed an additional requirement that attorneys may recover fees from the estate only if their labors actually benefitted the estate and have followed the pre–1979 cases and interpretation of Section 330's predecessor under the Bankruptcy Act

finding there was no change with the adoption of the Bankruptcy Code. *In re Reed,* 95 B.R. 626, 628 (Bankr.E.D.Ark.1988), *aff'd,* 890 F.2d 104, 105 (8th Cir.1989); *Matter of Ryan,* 82 B.R. 929, 932 (N.D.Ill. 1987); 2 *Collier on Bankruptcy,* ¶ 330.-04[3] 330–30 (15th ed. 1993).

■ The majority rule is that fees incurred in connection with Section 523 and Section 727 dischargeability actions are not recoverable from the bankruptcy estate in a Chapter 7 case since such fees do not benefit the estate. *In re Reed,* 890 F.2d 104, 105 (8th Cir.1989); *In re Rhoten,* 44 B.R. 741, 743 (Bankr.M.D.Tenn.1984). The Second Circuit has stated that "it is clear the services relating to the discharge are excluded, for the prosecution of the bankrupt's application therefore is a collateral matter which does not pertain to the administration of the estate." *In re Rothman,* 85 F.2d 51, 53 (2d Cir.1936). Although the United States District Court for the Northern District of Illinois in *Matter of Ryan* noted that the textual rationale for the Second Circuit's *Rothman* Rule no longer exists, the Court found no evidence that Congress had intended to change the *Rothman* decision and the balance between debtors' and creditors' interests when it had adopted the Bankruptcy Code. *Ryan,* 82 B.R. at 932. The *Ryan* Court went on to reason that allowing attorneys to collect fees for their defense of a debtor against a creditor's dischargeability complaints may enhance the debtor's ability for a "fresh start" but would leave less, maybe far less, to be distributed among creditors. *Id.* at 933.

In an earlier decision, the Bankruptcy Court for the District of New Mexico had given the same rationale for disallowing fees from the estate:

> Paying from the estate the attorneys fees of a dishonest debtor, or one whose honesty is legitimately open to question unnecessarily favors the fresh start over the distribution to creditors. Every dollar paid administratively is a dollar less paid to general creditors. The creditors

are already financing the debtor's fresh start through their loss; it hardly seems equitable for them to finance the debtor's attempt to prove he is worthy of discharge.

*In re Epstein,* 39 B.R. 938, 941 (Bankr. D.N.M.1984).

Additionally, the Chapter 7 debtor does have available post-petition wages and exempt property to compensate counsel for dischargeability litigation. *Stewart v. Law Offices of Dennis Olson,* 93 B.R. 91, 95 (N.D.Tex.1988). Furthermore, under the scheme of the Code, Congress did provide Section 523(d) which allows consumer debtors a judgment for costs and attorney's fees against a creditor who brings a dischargeability action in bad faith in the hopes of forcing a settlement on a debtor who is unable to afford adequate representation. *Epstein,* 39 B.R. at 940.

This Court agrees with the majority rule that in Chapter 7 or 13 cases when an application for an allowance is made for legal fees for representing a debtor in dischargeability actions under Sections 523, 727 or 1328, these fees are not recoverable from the estate.[1]

■ A similar analysis of benefit to the estate must be made in determining whether legal fees incurred in connection with a debtor's reaffirmation of a debt should be recoverable from the estate when an application for an allowance is made in a Chapter 7 case. A debtor's reaffirmation of a fully secured debt would not benefit either the estate or its creditors since that fully secured creditor would not otherwise participate in the distribution of the assets of the estate to unsecured creditors. However, a debtor's reaffirmation of an undersecured or unsecured creditor's dischargeable debt, which also results in a waiver by that creditor of the right to share in any distribution to unsecured creditors, may benefit the estate and the creditors of the estate if their distribution significantly increases. In the present case, where the funds on hand in the estate are significantly less

---

1. It should be noted that a separate application for an allowance is not required in this District

when legal fees do not exceed those customarily charged for simple Chapter 7 and 13 cases.

than necessary to pay even the allowed priority tax claims, the legal fees incurred in connection with the debtor reaffirming certain undersecured and unsecured debts with Chase Lincoln First Bank and Summit Federal Credit Union did not benefit the estate and its creditors and are not recoverable from the estate.[2]

The attorney for the debtor is allowed $1,775 (fees for a conference with the debtor more than one year prior to the filing of his petition are also disallowed) less the retainer of $1,000 for a total of $775.00 and disbursements of $28.41 from the estate. These fees are reasonable and benefitted the estate in what was an unusual and somewhat more complicated individual Chapter 7 case. The remainder of the fees, $5,688.25, are reasonable but are to be paid by the debtor individually.

**IT IS SO ORDERED.**

---

**2.** When determining benefit to the estate and creditors, the distributive provisions of Section 726 must be considered. Eliminating or reducing a debt in a class that will not, and would not reasonably have been expected to, receive a distribution does not benefit the estate or its creditors. In addition, a comparison must be made between the amount of legal fees incurred and the actual dollar increase in distribution to creditors. Incurring legal fees of $500 to eliminate by reaffirmation a $1,000 unsecured claim where the assets on hand would otherwise result in a 10% distribution to unsecured creditors does not benefit the estate even though it presumably benefits the debtor.