**In re Daryl Keith HOGG and Donna Rae Hogg, Debtors.**

**Bankruptcy No. 386–00062.**

United States Bankruptcy Court, D. South Dakota.

March 18, 1988.

Max A. Gors, Pierre, S.D., for debtors.

James A. Wyly, Aberdeen, S.D., for creditor.

## MEMORANDUM DECISION

IRVIN N. HOYT, Chief Judge.

### FACTS

Attorney Max Gors, of Gors, Braun and Zastrow, represents the Debtors in this case. On August 14, 1987, Mr. Gors applied for approval of an interim attorney's fee application. James Wyly, representing Norwest Bank ("Norwest" or "Bank"), a creditor herein, objected to the application. A hearing on the application was held November 3, 1987, in Pierre, South Dakota. Mr. Gors appeared personally and Mr. Wyly via telephone. At the hearing Mr. Wyly stated that at least $5,000.00 of the application was not disputed. An Order was entered allowing Mr. Gors this portion of his application, plus all expenses applied for, and the award of the remainder of the fees was taken under advisement.

Mr. Gors' application requested attorney's fees, paralegal fees, expenses and sales tax totalling $20,780.32. According to the fee application and appended itemized billing statement, the bulk of this sum is made up of 229 hours and 26 minutes of attorney time billed at the rate of $75.00 per hour. The Bank disputes only the attorney's fee portion of the bill.

The bulk, if not all, of the legal fees Norwest disputes were charged for work performed pursuing an adversary hearing held March 4, 1987. Judge Ecker entered a Memorandum Decision resolving the issues Mr. Gors raised in the adversary hearing. *In re Hogg*, 76 B.R. 735 (1987). Norwest prevailed on every issue. The Bank would have the Court disallow completely 136.60 hours of work Mr. Gors' itemized billing attributes to pursuing the adversarial matter. As a second and final challenge to Mr. Gors' application, the Bank argues in its brief that the remainder of the time contained on Mr. Gors' itemized billing "is at least double what one would reasonably expect to see in a case of this sort." The Analysis portion of this opinion is divided along these two assertions.

### LAW

11 U.S.C. Section 330 is the foundation upon which attorney's fees are paid from the bankruptcy estate. It allows the Court to award "reasonable compensation for actual, necessary services ... based on the nature, the extent, and the value of the services, the time spent on such services, and the cost of comparable services other than in a case under this title...." Bankruptcy Rule 2016 establishes requirements for the professional's application. "Only those legal services rendered in administering the estate and in carrying out the debtor's statutory obligations are recoverable from the estate, as administrative expenses and services designed only to benefit the bankrupt personally may not be compensable out of the estate." *In re Ellrich*, 81 B.R. 132, 16 B.C.D. 1258 (S.D.Fla.1987).

*See also* 2 Collier on Bankruptcy Para. 330.04[3] (15th Ed.1987).

It is important to note that "the burden of proof to show entitlement to fees is, in all matters, always on the applicant." *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bkrtcy.N.D.Ill.1987); *see also Matter of Combined Croft Corp.*, 58 B.R. 819 (Bkrtcy W.D.Wis.1986). It is also worthy to bear in mind the history of professional compensation made from a bankruptcy estate. Under the Bankruptcy Act the principal criterion in awarding attorney's fees was economizing expense to the estate. In order to encourage capable attorneys to practice in this complex legal area the Bankruptcy Code of 1978 changed this principle to allow attorneys to earn compensation available for rendering comparable services in non-bankruptcy cases. 11 U.S.C. 330, 1 *Norton Bankruptcy Law and Practice*, Section 13.22 (1981). This is not to mean that debtor's attorneys are afforded carte blanche. Even under the more liberal present standard, the Court should bear in mind that "every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtors." *In re Pettibone*, 74 B.R. at 299.

■ Even if no objection to a fee request is raised, the Court is still required to examine the application *sua sponte. Pettibone.* Certainly an interim application which exceeds $17,000.00 in attorney's fees alone merits serious scrutiny.

## ANALYSIS

### *Fees Incurred Pursuing the Adversarial Trial*

■ Norwest first argues that Mr. Gors should not be compensated for work performed pursuing the argument that the Bank was awarded a voidable preference. Mr. Gors argued the preference arose when the South Dakota Supreme Court added what amounted to $93,556.79 to a Circuit Court judgment in the Bank's favor, and when the Bank levied on the Debtors' farm machinery. Both acts occurred within ninety days before the date of petition.

This Court is not willing to find the work in this regard frivolous. Although these Debtors' arguments may not have been strong, it was necessary for Judge Ecker to spend a considerable amount of analysis to dispose of them. For this reason the Court finds work performed pursuing these arguments to be necessary and reasonable.

■ Norwest also alleges that Mr. Gors' various payment in full and accord and satisfaction arguments were also frivolous. These arguments were partially based upon the Debtors' payment of the balance of the $375,000.00 Circuit Court judgment by a check with the notation "payment in full." After an extended discussion concerning whether the Debtors were barred from raising the issue by res judicata (due to the previous Circuit Court trial), Judge Ecker's memorandum decision addressed the merits of these arguments. Although the Debtors raised these arguments in various forms, Judge Ecker was able to dispose of all versions in two paragraphs. Twice throughout the Memorandum Decision these arguments were found to be "without merit". 76 B.R. at 741 and 743.

Mr. Gors has not explained to the Court why pursuing these arguments was necessary and reasonable as required by Section 330. Based on the record this Court cannot find that Mr. Gors has met his burden regarding this work. Fees for this portion of Mr. Gors' representation should not be allowed. Accordingly, the Court finds that the work on Mr. Gors' itemized statement dated to have been performed "87/02/25," through "87/02/27" and stated to have dealt with "accord & satisfaction," "payment in full," and "doctrine of merger" issues is disallowed. The three hour entry of "87/02/26" listed simply as "prep for trial" is also found to be work in furtherance of these issues. Should this assumption seem unfair, the Court points out that Mr. Gors' statement has many vague entries such as "prep for trial" that could be disallowed completely as being overly vague under *Pettibone* and Rule 2016, which requires "detailed" statements. The total hours of work on these issues disallowed amounts to 18.6 hours. Billed at

$75.00 per hour this equals $1,395.00 in attorney's fees.

■ The remainder of Norwest's challenges to Mr. Gors' fee application concerns items listed as exempt property in the Hogg's schedules. It is unnecessary to examine the merits of Mr. Gors' attempt to exempt life insurance with a benefit value exceeding $20,000.00 and to exclude cash equal to the value of excludable property. Time spent attempting to exempt property is not recoverable from the estate. *Ellrich, supra*, (citing numerous similar holdings.) "This is a nonadministrative, post-petition service of benefit only to the debtors, analogous to the defense of criminal charges or resisting challenges to the debtor's discharge." *Id.*, at 1259, 81 B.R. 132. Mr. Gors' itemized billing contains entries totalling 2.55 hours apparently designated as work on the exemptions. Other work was obviously done to forward the debtors' claim of exemptions, but Mr. Gors has not itemized these specifically in his bill. Therefore the Court conservatively estimates that three additional unspecified hours were spent submitting amended claims of exemptions, researching the exemption issues, and writing the exemptions portion of pleadings and the brief submitted in the adversarial proceeding. This totals 5.55 hours or $416.25 of fees denied.

### Excessive Time Spent Per Task.

The Bank complains in its brief that the time the Bank has not specifically challenged above "is at least double what one would reasonably expect to see in a case of this sort." The Court has carefully examined Mr. Gors' itemized billing attached to his fee application. Two aspects of the billing strike the Court as improper. An inordinant amount of time was spent preparing the answer and counterclaim to the adversarial proceeding, and an excessive portion of the bill is made up of travel time billed at the full hourly rate.

■ The third page of Mr. Gors' itemized billing contains a 2.30 hour entry and a 2.45 hour entry attributed to "counterclaim," three entries totalling 10.30 hours attributed to "answer & counterclaim," one entry entitled "revise answer & counter-

claim" listed at 3.30 hours, and one 1.3 hour entry entitled "review & revise answer & counterclaim." This totals 19.65 hours billed out for what appears to be the service of answering and counterclaiming in the adversary proceeding. The answer and counterclaim total 13 double spaced pages, exclusive of exhibits. This certainly is a much more extensive pleading than is ordinarily entered in an adversary proceeding. However, the counterclaim portion of the complaint consists of less than six typed lines, which merely reallege the first seventy eight paragraphs of the answer, and claim that Norwest Bank possessed no lien on any of the debtors' property or property of the estate. The thought and dictation required to produce the counterclaim appears minimal and was not shown otherwise. The Court will give Mr. Gors the benefit of the doubt and assume that only that entry marked "counterclaim" was attributed to work on the counterclaim, and the entries marked "answer & counterclaim" or similarly were for work performed authoring the extensive answer. 4.50 hours of the 4.75 hour "counterclaim" entries are disallowed.

■ The final objectionable portion of Mr. Gors' application involves the entries attributed to travel time. 50.6 hours are designated to travel. Billed at the full rate this amounts to $3,795.00, or over 1/5 of the entire amount of the application attributed to attorney's fees. The case law seems generally in agreement that such substantial time spent traveling should be billed at a lower rate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823 (Bkrtcy.D.Vt. 1987); *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557 (Bkrtcy.C.D.Utah 1985); *In re Taylor*, 66 B.R. 390 (Bkrtcy.W.D.Pa.1986); *In re Watson Seafood & Poultry Company, Inc.*, 40 B.R. 436 (Bkrtcy.E.D.N.C. 1984); *In re United Rockwool, Inc.*, 32 B.R. 558 (Bkrtcy.E.D.Va., 1983); *In re International Coins & Currency, Inc.*, 22 B.R. 127 (Bkrtcy.D.Vt.1982). In fact, Mr. Gors has previously had a fee application reduced by Judge Peder Ecker of this district when ruling on objections based in part on Mr. Gors' billing travel at a full hourly rate. *In re Larry Eugene Hansen*

*d/b/a Hansen Farms,* Case No. 485–00388 (handed down July 28, 1986) (not designated for publication.) In that case Mr. Gors' travel time amounted to approximately twenty five percent of the entire application. This Court finds that portion of Mr. Gors' application attributed to travel time to be excessive and reduces the compensation for this time by one-half. Accordingly $1,897.50 will be disallowed as excessive travel time compensation.

The fee reduction rendered by this decision is not meant to comment upon the *quality* of the work Mr. Gors has performed thus far. In the future he is requested to submit more detailed applications as contemplated in *Pettibone, Jensen–Farley Pictures,* and *In re Doyle–Lunsta Sale Corp.,* 19 B.R. 1003 (D.S.D. 1982), so the Court is able to determine what amount of time is attributable to which specific service. It should be noted, however, that Mr. Gors by no means stands alone as the only debtors' attorney whose applications suffer from a lack of detail. Mr. Gors may also wish to exercise "billing judgment" when his efforts to "aggressively" litigate (his characterization) his bankruptcy lawsuits prove as completely unsuccessful as in this case. *See Jensen–Farley Pictures.*

The attorney's fee portion of Mr. Gors' bill will be reduced by $4,046.25. The sales tax shall be reduced proportionately also. Mr. Gors shall be allowed compensation for the apparently small amount of time logged defending his fee application. The Court would state that by virtue of the Debtor's attorney having acquired intimate knowledge and familiarity with the Debtor's situation further attorney's fees should be minimized.

The attorney for Norwest Bank shall submit an appropriate order. This decision shall serve as findings of fact and conclusions of law pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. The Court considered this matter to be a core proceeding under 28 U.S.C. § 157.