**In re Gary P. GRIMM, Ann E. Grimm, Debtors-in Possession.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the National Bank of Washington, Appellant,**

v.

**Gary P. GRIMM and Ann E. Grimm, Appellees.**

**No. 91–12262–AB.**
**Civ. No. 93–611–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 2, 1993.

---

**6.** The exact nature of the familial relationship which existed between Sarah and Nora is un-

clear from the opinion.

Dwight D. Meier, David B. Tatge, Christopher D. Thompson, Ginsburg, Feldman and Bress, Chartered, Washington, DC.

Michael L. Shor, David R. Kiney, David & Hagner, P.C., Washington, DC, for debtors-in possession.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

This bankruptcy appeal presents the question, not yet settled in this circuit, whether an award of counsel fees and expenses pursuant to 11 U.S.C. § 330(a) requires a predicate judicial finding that the claimed fees and expenses are incurred for services that benefitted the debtor's estate. For the reasons elucidated here, the Court concludes that § 330(a) requires such a predicate finding. Because it is unclear whether the Bankruptcy Court followed this governing principle, and because it is also unclear whether the record supports such a finding, the matter is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

### FACTS

The pertinent facts are undisputed and easily summarized. In 1987, debtors Gary and Ann Grimm entered into a loan relationship with National Bank of Washington ("NBW"), whereby NBW provided debtors five million dollars for the purpose of ac-

quiring a Demopolis, Alabama chemical plant. Within a year, NBW provided an additional three million dollars for expansion of the plant. Thereafter, in August 1990, NBW was declared insolvent and FDIC was appointed as receiver. Some ten months later, debtors filed a voluntary Chapter 11 petition in this Division. Following this filing, debtor's counsel, David & Hagner, sought and received approval from the Bankruptcy Court to serve as debtor's counsel.

During the pendency of debtor's bankruptcy proceeding, FDIC initiated an adversary proceeding seeking to except from discharge the debtors' outstanding NBW loan obligation, which then amounted to approximately $8,319,630 in principal and interest. As debtor's counsel, David & Hagner performed services and incurred expenses in connection with both the Chapter 11 proceedings and the related adversary proceeding challenging dischargeability of debtors' NBW loan obligation. The discharge proceeding was ultimately settled, and the Bankruptcy Court approved the settlement after proper notice to creditors.

David & Hagner, during the 1991–93 period, as debtors' counsel, submitted to the Bankruptcy Court four requests for approval of fees and expenses incurred in connection with both the Chapter 11 proceeding and the discharge proceeding. There were, more specifically, three interim requests and a fourth, final request. The exact amounts sought and approved are not material to disposition of this appeal, but it is important to note that on each occasion, FDIC objected, *inter alia,* on the ground that no fees and expenses attributable to the discharge proceeding could be approved as, unlike fees attributable to estate administration,[1] these fees were for services that did not benefit the bankruptcy estate. And it is also important to note that on each occasion the Bankruptcy Court approved fees and expenses, which, while usually less than the sums collected, included fees and expenses attributable to the discharge proceeding, as well as to other matters. Ultimately, the Bankruptcy Court approved $100,000 in fees attributable to the discharge proceeding. David & Hagner's fees for the discharge proceeding exceeded this sum, but the reorganization plan ultimately adopted and approved included a provision in which David & Hagner agreed to limit its discharge proceeding fee claim to $100,000, "subject to court approval."

While the "benefit to the estate" objection was raised and argued with respect to each fee application, it does not appear that the Bankruptcy Court either squarely resolved this issue or made findings concerning the presence or absence of benefit to the estate. Instead, it appears that the Bankruptcy Judge was chiefly moved by the notion that refusal to award fees from the estate to pay for counsel fees in discharge proceedings would effectively deny debtor representation for that proceeding.[2]

---

1. For a listing of the duties of a Chapter 11 debtor in possession, see 11 U.S.C. § 1107(a). Legal services rendered in connection with these duties would plainly benefit the estate.

2. Thus, at the final hearing on this issue, the Bankruptcy Judge noted that:

   The Court: I will say this is a very delicate area, and I'll tell you why. The Debtors filed a petition in bankruptcy. They have assets. Obviously, if there were no assets, we wouldn't be troubled here today with this problem. But they have assets. Sometimes substantial assets. Then someone files litigation against them, not always a 523.

   Then the court has a right to say that their attorneys will not be paid out of the assets of the estate. That, of course, effectively denies representation to those parties, and that places in the court the ascendance to the stratosphere close to God, which is a very difficult or bad position for the court to be in, as far as I'm concerned, because it removes the personal rights of the parties who have assets to have any kind of representation.

   This troubled me for a long time, this area, not quite for 34 years here, but it's troubled me for a long time. I have come to the conclusion that these cases have to be looked at very carefully, and simply to say that the funds belong to the creditors, and the debtor has no right to them, without further consideration, is a wrong position to take.

   I think the court has to look very carefully at these situations, and there is no two plus two equals four. There is no standard that you can say this is the rule and it will not be deviated from.

   Having looked at this case, and being more familiar with it than I would like to be, I have

Finally, it is worth noting that the reorganization plan ultimately adopted provided for bifurcation of FDIC's claim into secured and unsecured portions and provided for liquidation of debtors' non-exempt pre-petition assets. This plan, significantly, was approved before the discharge proceeding was settled and, of course, before the filing and disposition of David & Hagner's fourth and final fee application. Given this, it is difficult to see how any legal efforts on debtors' behalf in the discharge proceeding could have affected the plan.

### ANALYSIS [3]

■ Analysis appropriately begins with the terms of 11 U.S.C. § 330(a), which governs the power of courts to award fees in this context. That statute provides, in pertinent part, as follows:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services

other than in a case under this title;
...

11 U.S.C. § 330(a).

Ambiguities in the statute render the plain language indeterminate in this context. The statute does not specify what the services must be "necessary" for, nor to whom the services must have "value." Absent such specificity, the statute's plain language does not itself answer the question whether benefit to the estate is a requirement for approval of fees and expenses. In these circumstances, courts construing § 330(a) must resort to other statutory interpretation aids, including the purpose of the provision in the overall scheme of the Bankruptcy Code and legislative history.

Court that have engaged in this effort have, in the main, concluded that benefit to the bankruptcy estate is a prerequisite for an award of fees and expenses under § 330(a). Leading this majority line of decisions is the Eighth Circuit's *per curiam* decision in *In re Reed*, 890 F.2d 104 (8th Cir.1989). There the Eighth Circuit panel noted the split in authority, but concluded that "[i]n our judgment, the overwhelming weight of authority propounds the better rule requiring benefit to the estate...." *Id.* at 105. [4] Decisions propounding this "better rule" note in support that contrary authority under the current (1978) Bankruptcy Code is scant, questionable and unpersuasive.[5] Also noted in support by

---

to come to the conclusion that counsel is entitled to a fee, for the very reason that, otherwise, they have large assets, they would be denied—the last time I check, attorneys, at least in this area, do not work for congratulations and experience. They like to have some money in it. I would be effectively, if that's the standard rule, denying representation to any debtor that came before this court with assets. For that reason, I'm going to approve the balance of the fee.

**3.** The applicable standard of review is uncontroversial. A Bankruptcy Court's legal conclusions, as here, are reviewed *de novo*. *See In re Green*, 934 F.2d 568, 570 (4th Cir.1991); Fed. R.Bankr.P. 8013. Neither the "clearly erroneous" factual review standard, nor the mixed question of fact and law review standard are implicated by the Court's disposition of this appeal. *See Harman v. Levin*, 772 F.2d 1150 (4th Cir.1985) (factual findings relating to § 330(a) fee awards reviewed under clearly er-

roneous standard); *In re McWhorter*, 887 F.2d 1564 (11th Cir.1989) (mixed questions of law and fact in which legal issues prevail are reviewed *de novo* ).

**4.** *See also In re Robbins*, 151 B.R. 364 (Bankr. W.D.Va.1993); *In re Kingsbury*, 146 B.R. 581 (Bankr.D.Me.1992); *Wootton v. Ravkind*, 143 B.R. 671 (Bankr.N.D.Tex.1992); *In re Oakes*, 135 B.R. 511 (Bankr.N.D.Ohio 1991); *In re Lilliston*, 127 B.R. 119 (Bankr.D.Md.1991); *In re Ryan*, 82 B.R. 929 (N.D.Ill.1987).

**5.** *See In re Deihl*, 80 B.R. 1 (Bankr.D.Me.1987) (adopting "minority" rule allowing compensation for dischargeability services from estate), *criticized and rejected by the same court in, In re Kingsbury*, 146 B.R. 581 (Bankr.D.Me.1992). *See also In re Holden*, 101 B.R. 573, 575 (Bankr. N.D.Iowa 1989) (describing *Deihl* and its cited authority, *In re Gray*, 7 C.B.C. 571 (Bankr.D.Me. 1975) and *In re Spisak*, 2 B.C.D. 1592 (Bankr. D.N.J.1977), as a "splinter of authority").

some courts following this "better rule" is that this construction of § 330(a) sensibly "carr[ies] over the near unanimous view of prior Bankruptcy Act [of 1978] cases that, as a matter of law, attorneys may recover fees from the estate only if their labors actually benefitted the estate." *In re Ryan,* 82 B.R. 929, 931 (N.D.Ill.1987) (quoted in *In re Holden,* 101 B.R. 573, 574 (Bankr.N.D.Iowa 1989).

The rationale for requiring benefit to the estate before permitting fees and expenses to be paid from estate assets is both sensible and consistent with the overall purposes of the Bankruptcy Code. Providing debtors in certain circumstances with an opportunity for a fresh start is certainly a goal of the Code, which is financed, albeit, less than willingly, by creditors who, generally must accept less than 100 cents on every debt dollar. But fairness, too, is a Code value. And, requiring a showing of some benefit to the estate as a predicate to a § 330(a) fee award strikes the right balance between the goal of providing a fresh start and fairness. The court in *In re Epstein,* 39 B.R. 938, 941 (Bankr.D.N.M. 1984) put this point compellingly:

> Paying from the estate the attorneys fees of a dishonest debtor, or one whose honesty is legitimately open to question unnecessarily favors the fresh start over the distribution to creditors. Every dollar paid administratively is a dollar less paid to the general creditors. The credi-

tors are already financing the debtor's fresh start through their loss; it hardly seems equitable for them to finance the debtor's attempt to prove he is worthy of discharge.

In the context of this case, "it hardly seems equitable" to require FDIC and other creditors to bear the cost of the debtors' efforts to defendant against allegations of misconduct in the discharge proceeding if those efforts do not enure to the benefit of the estate from which the creditors will be paid.

■■■ Although § 330(a) is properly and sensibly construed as requiring some showing of benefit to the estate, there is no warrant in the statute or policy for concluding that fees and expenses incurred in discharge proceedings may never be awarded. To the extent that any decisions seem to support such a *per se* rule,[6] they are not followed here. Whether a § 330(a) fees and expenses award is appropriate depends on the specific facts presented. Courts must examine the facts of each case to determine whether § 330(a)'s requirements are met, including the requirement of benefit to the estate. In certain circumstances, counsel's services on behalf of a debtor in a discharge proceeding may involve a benefit to the estate.[7] Whether this is such a case is left for the Bankruptcy Court to decide on remand after making appropriate findings of fact.[8]

---

6. *See e.g., In re Lilliston,* 127 B.R. 119 (Bankr. D.Md.1991).

7. *In re Murray,* 132 B.R. 808, 809–10 (Bankr. D.Mass.1991) appears to be such a case. There, the court overruled a creditor's objection to that asserted here by FDIC. In reaching this conclusion, the Court noted that

> Certainly, in the normal case, where the dischargeability litigation is free standing, the fees are easily applied to the account of the debtor rather than the estate. Here, however, the issues involved in the claimed RICO and ERISA matters, as well as the allegations of fraud and conversion are virtually the same as the elements of proof of nondischargeability.
>
> Under the *peculiar circumstance* of this case, the Court finds that the fees attributed to defense of the dischargeability aspects of the case are *so connected* to the legal services which are appropriately charged to the ac-

count of the estate *that it is both impossible and unwise to attempt a severance.* (emphasis added)

8. Findings of fact are required in contested fee applications. *See* Fed.R.Bankr.P. 7052, which is made applicable to contested matters by Fed. R.Bankr.P. 9014; *see also* Advisory Committee Note to Fed.R.Bankr.P. 9014 ("If a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter.") No specific findings of fact on the § 330(a) appear in this record. Even so, no remand would be necessary if findings could be inferred from the record and the ruling. *See In re Plaza Family Partnership,* 95 B.R. 166, 169 (E.D.Cal.1989). Inferred findings, while perhaps possible here, could not, in the Court's view, be reached with the requisite confidence. A remand is both prudent and proper. And it is left to the Bankruptcy Court's discretion whether good cause exists to reopen

The scope of the remand properly includes all interim awards, for, as the order awarding David & Hagner's third interim request noted, the interim fee awards were subject to further court review on the occasion of the request for approval of the final fee application. *See In re Taxman Clothing Co.*, 134 B.R. 286, 291 (N.D.Ill. 1991) (when the issue of final compensation is before it, bankruptcy court has the obligation, if appropriate, to revisit any prior interim awards). Nor is *res judicata* any bar to this Court's review of any fee requests or to the Bankruptcy Court's review of all fee requests on remand. David & Hagner argued initially that the plan approval foreclosed FDIC from objecting to fees awarded for the discharge proceeding because the plan provided that the firm "[h]as agreed not to ... seek from the Bankruptcy Estate more than $100,000 for fees and expenses incurred in connection with the FDIC dischargeability litigation." This argument was rejected. Even assuming, *arguendo*, that plan provisions can be used to circumvent § 330(a),[9] the plan explicitly prefaced the provision with the phrase "subject to court approval." Thus, the plan merely reflects David & Hagner's agreement to cap their fee application; it does not provide any basis for the operation of *res judicata*.

On remand, therefore, the Bankruptcy Court should examine all the fee requests for services and expenses incurred in connection with the discharge proceeding to ascertain whether any of these services or expenses benefitted the bankruptcy estate. If the court finds such benefit, it may award reasonable fees and expenses for those services. If not, the court should deny the fee application and order disgorgement.

---

the factual record or to call for further briefs or arguments. In this regard, the already voluminous record and the attention already devoted to the absence or presence of any benefit may militate against any extensive additional effort.

**9.** *See In re Pettibone Corp.*, 74 B.R. 293, 299–300 (Bankr.N.D.Ill.1987) (bankruptcy court has independent responsibility to ensure reasonableness of fee application, *sua sponte*, if necessary). *See also In re Taxman Clothing, supra,* 134 B.R. at 290–91 (same).