In re Harold Nessly HANSON, and Linda Lee Hanson, Debtors.

MAYER, GLASSMAN & GAINES, Appellant,

v.

Donald A. WASHAM and David A. Gill, Appellees.

BAP No. CC–94–1113–HJV.

Bankruptcy No. LA 87–26186–KL.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 20, 1994.

Decided Sept. 13, 1994.

---

**68**

Mark T. Young, Los Angeles, CA, for Mayer, Glassman & Gaines.

Jeffrey L. Sumpter, Los Angeles, CA, for David A. Gill, Trustee.

Before HAGAN, JONES and VOLINN, Bankruptcy Judges.

1. All references herein to the "Bankruptcy Code" or the "Code" refer to 11 U.S.C. §§ 101 through 1329. Unless otherwise noted, all references to

## OPINION

HAGAN, Bankruptcy Judge:

Debtors' counsel, Mayer, Glassman & Gains ("MG & G"), submitted an application for allowance and payment of attorney's fees and expenses. The bankruptcy court denied the application. MG & G appeals. We affirm.

### I. Background

Harold and Linda Hanson ("debtors") filed their joint petition for relief under chapter 7 of the United States Bankruptcy Code[1] on December 23, 1987.

On February 2, 1989, the Trustee filed a "Motion to Sell Real Property Free and Clear of Liens," seeking an order approving the sale of the debtors' residence. The Trustee did not object to the debtors' claimed homeowners exemption in their residence, but contended there was some $588,000 of additional equity in the property that could be realized by the sale of the residence. MG & G, on behalf of the debtors, filed an objection to the sale. The bankruptcy court approved the sale and the debtors appealed.

However, before a final order was issued by the Bankruptcy Appellate Panel, the parties entered into a settlement agreement. Pursuant to the settlement agreement the debtors agreed to settle all of the creditors' claims for the sum of $200,000.

The bulk of the fees claimed by MG & G are for representation of the debtors involving their objection to the Trustee's motion for approval of the sale of the residence.

### II. The Bankruptcy Court's Decision

MG & G filed its "Application for Allowance and Payment of Final Fees and Expenses" on April 21, 1992. Of the services performed by MG & G, 9.7 hours were spent in preparing the petitions and other routine functions; 175.05 hours were spent opposing the trustee's motion to sell the debtor's residence; and 4.85 hours were spent on an unidentified additional matter.

The Trustee objected to the application on the ground the services rendered by MG & G

"Code section" or "section" refer to Bankruptcy Code sections.

were for the benefit of the debtors and not for the benefit of the estate. MG & G responded that the plain language of Code section 330(a)[2] requires that debtor's counsel be awarded compensation for all "reasonable services" that are "actual" and "necessary", regardless of whether such services benefit the bankruptcy estate.

Having determined that compensation under section 330(a) must be limited in light of the purposes of the Bankruptcy Code, the bankruptcy court reasoned that the estate should not be required to fund actions intended to deplete the amount available for distribution to the creditors or which are in direct opposition to the actions of the trustee in pursuing his duties under section 704.[3] The court then found that all of the services rendered by the debtors' counsel were for the purpose of hindering the Trustee in the administration of the estate. Accordingly,

the bankruptcy court denied MG & G's application for compensation.

## III. Standard of Review

A bankruptcy court's findings of fact must be upheld by the reviewing court unless they are clearly erroneous. *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1377 (9th Cir. 1985); Fed.R.Bankr.P. 8013[4]. On the other hand, the bankruptcy court's conclusions of law are subject to *de novo* review. *Pizza of Hawaii*, 761 F.2d at 1377. If the bankruptcy court does not specifically address issues of law necessary to an order, implicit conclusions of law are likewise entitled to *de novo* review. *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1333 (9th Cir.1985).

Accordingly, "absent a finding that the court abused its discretion or erroneously applied the law" a bankruptcy court's award of attorney fees should be upheld on appeal.

**2.** Section 330(a) provides:

After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

**3.** Section 704 provides:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as, with the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

11 U.S.C. § 704.

**4.** Federal Rule of Bankruptcy Procedure 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility to the witnesses.

Fed.R.Bankr.P. 8013.

*In re Reimers,* 972 F.2d 1127, 1128 (9th Cir.1992), quoting *Boldt v. Crake (In re Riverside–Linden Inv. Co.),* 945 F.2d 320, 322 (9th Cir.1991).

## IV. Discussion

### A. The Requirements of Section 330(a)

■ The majority of the courts considering the issue have concluded that a chapter 7 debtor's attorney is not entitled to an award of fees for services which benefited only the debtor and not the estate. *In re Reed,* 890 F.2d 104, 105–06 (8th Cir.1989); *In re Kingsbury,* 146 B.R. 581, 585 (Bankr.D.Me.1992).[5] The Ninth Circuit Court of Appeals adopted this rule in *Alcala v. Towers (In re Alcala),* 918 F.2d 99, 103 (9th Cir.1990) (because the chapter 7 debtor's efforts in support of the debtor's motion to abandon property were not necessary to the administration of the estate and did not benefit the estate, the debtor's attorney was not entitled to attorney's fees pursuant to 11 U.S.C. § 330(a)).[6]

However, MG & G contends the United States Supreme Court's decision in *Union Bank v. Wolas (In re ZZZZ Best Co., Inc.),* 502 U.S. 151, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) requires this panel to reject the "benefit to the estate" requirement and award debtors' counsel attorney's fees for all actual and necessary services. In *ZZZZ Best Co.,* the chapter 7 trustee filed a complaint under 11 U.S.C. § 547(b) against a bank to recover preferential payments made by the debtor within the ninety-day period proceeding the filing of the petition. The bank contended

that the payments were made in the ordinary course of business and were therefore exempt from the ninety-day reach back pursuant to 11 U.S.C. § 547(c)(2). The bankruptcy court held in favor of the bank, and the district court affirmed. The Ninth Circuit Court of Appeals reversed on the ground the legislative history of the "ordinary course of business" exception makes it clear that Congress intended to address only short-term debt. The Supreme Court held that once a court determines that the plain meaning of a statute is clear, the statute's legislative history is not relevant and the courts must enforce the statute as written. The Supreme Court concluded the meaning of section 547(c)(2) was plain on its face, and reversed the Court of Appeals.

■ We agree that where a statute is plain and unambiguous it should be interpreted as written unless the plain meaning of the language would "produce a result 'demonstrably at odds with the intentions of its drafters.'" *United States v. Locke,* 471 U.S. 84, 93, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985), quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). However, there are two reasons why this rule does not apply to the benefit to the estate requirement incorporated by the courts in section 330(a). First, the use of the word "may" rather than "shall" when directing courts to award attorney's fees suggests that Congress intended to leave the courts free to impose additional requirements on the award of attorney's fees. Second, as concluded by the bankruptcy

---

5. For an extensive list of cases holding that debtor's counsel is only entitled to compensation for services which benefit the estate, *see Kingsbury,* 146 B.R. at 585.

6. *See also Pfeiffer v. Couch (In re Xebec),* 147 B.R. 518, 523 (9th Cir. BAP 1992) (holding that a chapter 11 debtor's attorney may be awarded attorney's fees for services performed after the appointment of a chapter 11 trustee only if those services provide a benefit to the estate); *In re Sugarman,* 137 B.R. 391, 392–94 (Bankr.S.D.Cal. 1992) (chapter 11 debtor's attorney is entitled to fees for services rendered after the appointment of a trustee only if the services benefit the estate); *In re De La Rosa,* 91 B.R. 920, 921–22 (Bankr.

S.D.Cal.1988) (holding that a chapter 7 debtor's counsel is not entitled to compensation for opposing the trustee's objection to claim of exemption because such services benefit the debtor personally rather then the estate); *In re Cleveland,* 80 B.R. 204, 206 (Bankr.S.D.Cal.1987) (holding that a debtor's attorney is not entitled to compensation for defending the dischargeability of a debt as such services do not benefit the estate); *see also Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19 (9th Cir. BAP 1988) (holding chapter 11 debtors may not use estate property for their own personal living expenses and noting in *dicta* that this rule is in accord with the court's power "to preclude use of estate property for payment of attorneys where services benefit only the debtor, and not the estate.")

court, the language of section 330(a) is not plain and unambiguous.

> The statute [section 330(a) ] does not specify what the services must be "necessary" for, nor to whom the services must have "value." Absent such specificity, the statutes's plain language does not itself answer the question whether benefit to the estate is a requirement for approval of fees and expenses. In these circumstances, courts construing § 330(a) must resort to other statutory interpretation aides, including the purpose of the provision in the overall scheme of the Bankruptcy Code and legislative history.

*Federal Deposit Insurance Corporation v. Grimm (In re Grimm)*, 156 B.R. 958, 961 (E.D.Va.1993).

Code sections 330(a) and 503 are structurally very similar to their predecessor section in the Bankruptcy Act.[7] The legislative history of Bankruptcy Code sections 330(a) and 503 does not reveal any evidence Congress intended to change the law with regard to the services for which compensation is awardable.[8] Given Congress's apparent lack of intent to change the law, coupled with the structural similarity between the Act and Bankruptcy Code provisions, most courts have concluded that Congress did not intend to change the reasons for which attorney's fees are awarded, only the method by which the amount of the fees are determined. *In re Epstein*, 39 B.R. 938, 940 (Bankr.D.N.M. 1984). *See also Grimm*, 156 B.R. at 961–62; *Reed*, 890 F.2d at 105–06.

**7.** The Bankruptcy Act predecessor provision to sections 330 and 503 is 11 U.S.C. § 104(a) (repealed October 1, 1979). The Bankruptcy Act provision provided priority payment for:

> ... (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; ... and one attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the bankrupt....

Former 11 U.S.C. § 104(a) (this section was enacted as § 64 of the Bankruptcy Act of July 1, 1898).

Bankruptcy Code, section 503(b) provides priority payment for:

> (1)(A) the actual, necessary costs and expenses of preserving the estate ...

For this reason those courts first interpreting section 330(a) after passage of the Bankruptcy Code relied upon case law interpreting the Bankruptcy Act. Under the Act, there was a split of authority as to whether attorney fees incurred defending dischargeability actions were payable from the estate. Some courts held that any fees incurred in carrying out the provisions of the Act should be compensated out of the estate. *In re Gray*, 7 C.B.C. 571 (Bankr.D.Me.1975). Other courts refused to award compensation for fees incurred defending actions relating to discharge. *See In re Jones*, 665 F.2d 60 (5th Cir.1982); *Glazer v. Joliffe (In re Rothman)*, 85 F.2d 51 (2nd Cir.1936); *Lewis v. Fitzgerald*, 295 F.2d 877 (10th Cir.1961). However,

> "[t]he weight of authority under the Act was in favor of limiting compensability to services rendered in assisting debtors in performing their legal duties rather than exercising their legal privileges.... The Code makes no change in this regard."

*In re Epstein*, 39 B.R. 938, 940 (*quoting* 2 Collier on Bankruptcy, ¶ 330.04(3) (15th ed. 1984)).

Thus, the current majority rule under the Code which requires that in order to be compensable from estate funds, services rendered by the debtor's attorney must benefit the estate, " 'carr[ies] over the near unanimous view of prior Bankruptcy Act cases that, as a matter of law, attorneys may recover fees from the estate only if their labors actually benefited the estate.' " *Grimm*, 156 B.R. at 962 (alteration omitted) (*quoting In re Ryan*, 82 B.R. 929, 931 (N.D.Ill.1987)).

> (2) compensation and reimbursement awarded under section 330(a) of this title.
>
> \* \* \* \* \* \*
>
> 11 U.S.C. § 503(b). Under section 330(a) a debtor's attorney is entitled to "reasonable compensation for actual, necessary expenses." 11 U.S.C. § 330(a).

**8.** "The legislative history is essentially silent as to any Congressional intent to effect a change in the law, noting only that Code § 503 is derived mainly from Act § 64(a)(1), with some case law incorporated, [citation omitted] and that 'Notions of the economy of the estate in fixing fees are outdated and have no place in bankruptcy code [sic]' ". *In re Epstein*, 39 B.R. 938, 940 (Bankr. D.N.M.1984), quoting 124 Cong.Rec.H (11091–2 (Sept. 28, 1978); S 17,408 (Oct. 6, 1978).

Nor is the prohibition of the award of compensation for services which do not benefit the estate a mere appendix blindly carried over from pre-Code cases:

> The rationale for requiring benefit to the estate before permitting fees and expenses to be paid from estate assets is both sensible and consistent with the overall purposes of the Bankruptcy Code. Providing debtors in certain circumstances with an opportunity for a fresh start is certainly a goal of the Code, which is financed, albeit, less than willingly, by creditors who, generally must accept less than 100 cents on every debt dollar. But fairness, too, is a Code value. And, requiring a showing of some benefit to the estate as a predicate to a § 330(a) fee award strikes the right balance between the goal of providing a fresh start and fairness.

*Grimm,* 156 B.R. at 962.

This conclusion has been widely adopted. In fact, we are aware of only one Code era case which holds to the contrary, *In re Deihl,* 80 B.R. 1 (Bankr.D.Me.1987). In *Deihl,* the debtor's counsel sought compensation for representation of the debtors in an adversary proceeding to determine the dischargeability of a debt. The *Deihl* court examined the legislative history of section 330 and determined that services which were compensable under the Act were also compensable under the Code. *Deihl,* 80 B.R. at 1 (*citing Epstein,* 39 B.R. at 940). The court then cited the Bankruptcy Act decision, *In re Gray,* 7 C.B.C. 571 (Bankr.D.Me.1975), for the proposition that all services rendered in aid of the administration of the estate and carrying out the provisions of the Act are entitled to compensation. *Deihl,* 80 B.R. at 1 (*citing In re Gray,* 7 C.B.C. at 571). The *Gray* decision was in the minority of cases interpreting the Bankruptcy Act provisions.

However, the District of Maine has since rejected its earlier decision in *Deihl* and joined the majority. *In re Kingsbury,* 146 B.R. 581, 583 (Bankr.D.Me.1992). In rejecting *Deihl,* the *Kingsbury* court explained the court's decision in *Gray* as follows: The *Gray* court concluded that the award of attorney's fees was "a policy issue, appropriately resolvable by the courts in a manner consistent with enabling debtors to obtain a meaningful discharge." *Kingsbury,* 146 B.R. at 583 (*citing Gray,* 7 C.B.C. at 583–84):

> Concluding that the Act's language did not foreclose compensation for dischargeability defenses, *Gray* considered the impact of spurious dischargeability actions on a debtor's "fresh start," in light of the meaningful possibility that default judgments might be entered against debtors unable to afford to retain counsel. [Citation omitted.] "Economy of administration.... was never intended to entrench overburdened debtors in economic peonage by depriving them of necessary legal representation in pursuit of the only meaningful legal remedy available to them." [Citation omitted.]

*Kingsbury,* 146 B.R. at 583.

The *Kingsbury* court concluded that while *Gray* was admirably reasoned, it had never been adopted by any other jurisdiction and that the specific problem it had addressed, i.e., the specter of a creditor suing a debtor for the nuisance value of a dischargeability suit, has since been redressed by Congress in section 523(d).[9] Having concluded the concerns raised by the court in *Gray* are no longer applicable, the *Kingsbury* court overruled *Deihl* and adopted the majority rule:

> Under the *Deihl* rule, Chapter 7 trustees might be prevented from completing case administration while dischargeability suits remained pending. The instant case shows this clearly: a fairly straightforward liquidation, it remains open more than three years after filing the petition. Administrative problems would be compounded under the minority rule: Lacking control over litigation, the trustee could only watch as debtors' attorney fees swallowed up substantial portions of the assets col-

9. Section 523(d) provides:
If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.
11 U.S.C. § 523(d).

lected to pay creditors and administration expenses.

The majority rule does not deny the Chapter 7 debtor assets with which to pay the price of his or her dischargeability defense.... [T]he Code sets aside resources that a debtor may devote to his or her defense, including exempt assets and post petition earnings. *In re Lilliston,* 127 B.R. [119] at 122 [ (Bankr.D.Md.1991) ]; *In re Leff,* 88 B.R. [105] at 109 [ (Bankr.N.D.Tex.1988) ]. " 'This approach furthers the 'fresh start' objective of the Bankruptcy Code while not putting the full burden of the debtor's legal expenses on the estate and, consequently, the creditors.' " *Id.,* (quoting *In re Hunt,* 59 B.R. 842, 844 (Bankr.N.D.Ohio 1986) and *In re Zweig,* 35 B.R. 37, 38 (Bankr.N.D.Ga. 1983)).

*Kingsbury,* 146 B.R. at 586.

**B. Benefit to the Estate**

 In the alternative, MG & G contends that the services performed in opposing the trustee's motion to sell the debtor's homestead benefited the estate. A Ninth Circuit Bankruptcy Appellate Panel recently set forth several considerations for determining whether services benefit the estate:

(1) whether the debtor's attorney's actions duplicated the duties of the trustee or the trustee's counsel under 11 U.S.C. § 1106; [citations omitted] (2) whether the services have in fact, obstructed or impeded the administration of the estate; [citations omitted] and (3) whether the debtor attorney's actions are consisted with the debtor's duties under 11 U.S.C. § 521.

*Pfeiffer v. Couch (In re Xebec),* 147 B.R. 518, 523 (9th Cir. BAP 1992).

Here, MG & G opposed the Trustee's motion to sell the debtor's residence. MG & G characterized its opposition as actions taken to protect the debtor's homeowners exemption.

The debtor's opposition to the Trustee's motion is not consistent with the debtor's duties under section 521.[10] Further, it is clear that the services provided by MG & G obstructed the administration of the estate. Thus, under the *Xebec* test, MG & G's services were not beneficial to the estate.

Those courts which have considered the matter have held that services rendered in defending exemptions are not for the benefit of the estate. *In re De La Rosa,* 91 B.R. 920, 922 (Bankr.S.D.Cal.1988) (*citing In re Howerton,* 23 B.R. 58, 59 (Bankr.N.D.Tex. 1982), and *In re Ellrich,* 81 B.R. 132 (Bankr. S.D.Fla.1987)); *In re Hogg,* 103 B.R. 207, 210 (Bankr.D.S.D.1988).

**C. Timeliness of Trustee's Objection**

 MG & G also contends that the bankruptcy court abused its discretion by allowing the Trustee additional time to sub-

---

10. Section 521 provides:

The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs;

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraph (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title; and

(5) appear at the hearing required under section 524(d) of this title.

11 U.S.C. § 521.

mit a response to MG & G's fee application. However, as indicated by the hearing transcript, the Trustee did not receive notice of the hearing. Under these circumstances, the bankruptcy court did not abuse its discretion by allowing the Trustee additional time to file its written memorandum.

Further, even if the bankruptcy court should not have allowed the Trustee additional time, the bankruptcy court would still have had an independent duty to examine MG & G's application *sua sponte*. *In re Hogg,* 103 B.R. at 209 (*citing In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987)).

### V. Conclusion

Appellant contends this panel should overrule our decision in *Xebec,* ignore the Ninth Circuit's decision in *In re Alcala,* and hold that a chapter 7 debtor's attorney is entitled to an award of fees regardless of whether his services benefited the estate. Whether interpreting the Bankruptcy Act or the Code, the vast majority of courts require a chapter 7 debtor's attorney to demonstrate that his services benefited the estate before granting an award of attorney's fees. This rule is based upon the legislative history of Bankruptcy Code section 330(a) and the unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of creditors.

The decision of the bankruptcy court is affirmed.