**In re Boyd C. MAHAFFEY, Debtor.**

**No. 95–41876–7.**

United States Bankruptcy Court, D. Montana.

April 25, 2000.

R. Clifton Caughron, Caughron & Associates, Helena, MT, for debtor/applicant.

Daniel P. McKay, Senior Attorney–Advisor, Office of U.S. Trustee, Great Falls, MT, for Office of U.S. Trustee.

### *ORDER*

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 bankruptcy case R. Clifton Caughron ("Caughron" or "Applicant"), former attorney for the Debtor[1], filed a "Final Application for Professional Fees and Costs" on November 10, 1999, requesting fees in the sum of $9,110.30 and costs in the sum of $602.24. Objection thereto was filed by the Office of U.S. Trustee on March 9, 2000, and hearing was held on Caughron's application on March 14, 2000. Caughron and counsel Daniel P. McKay on behalf of the U.S. Trustee's Office appeared at the hearing. Thereafter, Caughron filed a brief in support of his application. There is no Final Report yet filed by the Chapter 7 Trustee as the case is still under administration.

The basis of the U.S. Trustee's objection is that Caughron's legal services, "for the most part", were performed after conversion of this case to Chapter 7, and did not benefit the estate. In response, Caughron argues that valuable legal services to the estate were performed since Caughron served as a "buffer between the Debtor and the Trustee, and by making every effort to impart the voice of reason to the Debtor, who was very frequently unreasonable." The Debtor died in January of 1999. No evidence was solicited by Caughron from the Chapter 7 Trustee as to the value of legal services Caughron performed for the benefit of the Chapter 7 estate. It is admitted that the Chapter 7 Trustee never sought to have Caughron appointed as the attorney for the Trustee under §§ 327(a) or (e).

Caughron's brief cites at length from *In re Century Cleaning Services, Inc.*, 195 F.3d 1053 (9th Cir.1999) (Thomas, J., dissenting) that a debtor's Chapter 7 attorney in the Ninth Circuit can receive compensation under section 330 of the Bankruptcy Code for Chapter 7 post-petition services, despite the deletion from that section by the Bankruptcy Reform Act of 1994[2] of the phrase "or to the debtor's attorney".

Accepting as we must the *Century Cleaning Services* holding allowing Chapter 7 debtor's counsel to be eligible for an award of fees for post-petition services as an administrative expense, the inquiry does not end there. Indeed, § 330 specifically requires that reasonable compensation rendered to such attorney must be based "on the nature, the extent, and the value of such services, the time spent on such services, and the costs of compensable services other than in a case under

1. The Debtor's counsel represented the Debtor in a Chapter 11 case filed October 26, 1995, beginning on January 17, 1996. The case was converted to Chapter 13 on March 3, 1996, and to Chapter 7 on July 22, 1996.

Caughron filed a motion to withdraw as counsel on July 21, 1999, and that motion was granted on July 23, 1999.

2. Pub.L. No. 103–394, § 702(b)(1) (1994).

this title". As one bankruptcy court has noted, despite the controversy over the deletion of the words "or to the debtor's attorney", *Century Cleaning Services*, 195 F.3d at 1056, the legal services for which compensation is sought must benefit the Chapter 7 estate. *In re Redding*, 242 B.R. 468, 475 (Bankr.W.D.Mo.1999). *See, also In re Met–L–Wood Corp.*, 103 B.R. 972, 976 (Bankr.N.D.Ill.1989), *aff'd.* 115 B.R. 133 (N.D.Ill.1990): "It is well-settled that a debtor's attorney is not entitled to compensation from the estate unless his services benefitted the estate. *In re Ryan*, 82 B.R. 929 (N.D.Ill.1987)."

■ The Court is now charged with the task of independently reviewing the fee request to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir.1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr.N.D.Ill.1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Id.* (quoting *In re Evans*, 153 B.R. 960, 968 (Bankr.E.D.Pa.1993)).

■ Extensive case law has developed regarding the amount and type information that applicants must include in their application. The case of *In re WRB–West Associates*, 9 Mont.B.R. 17, 18–20, 1990 WL 517058 (Bankr.Mont.1990) summarizes thus:

Pursuant to 11 U.S.C. §§ 327–330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D.Okla.1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr.Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr.S.D.1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr.N.D.Ill.1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939–940 (Bankr. N.D.Ill.1989) holds:

> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700–731 (Bankr.N.D.Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr.E.D.Va.1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

■ The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to insure that applicants provide:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

As explained by the Ninth Circuit Court of Appeals: "The detailed fee applications enable the bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985).

■ The application shows the Debtor's counsel received $1,500.00 at the commencement of the case and no fees were awarded to counsel in the Chapter 11 or Chapter 13 case prior to conversion to Chapter 7 on July 22, 1996. An examination of the application for legal services run from July 29, 1996 to July 23, 1999, total 71.67 hours, billed at $100.00 to $110.00 per hour.

The services detailed show many are for services directly related to the Debtor's interests, such as discussion on appeal of the conversion to Chapter 7; 6.46 hours about "events of weekend, when his property was entered and some documents removed without his permission, and call from Debtor's daughter, with work on reconsideration"; 2.93 hours on final revisions of reconsideration; client in office for meeting (1.71 hr.); letters to other parties; calling client "regarding what our strategy would be in the Chapter 7" and agreed to appeal; discussing order denying extension of time to appeal; discussing Debtor's medical condition and possibility of running a viable business if appeal is successful, call from client that "he is going through the 'dying process' and that the client has been contacting other attorneys to pursue his claim against Pat" (2.18 hrs.); "Call from client" (1.78 hrs.); call from client's daughter and client regarding 341 meeting (2.12 hrs.); call re: continuance of 341 meeting; call from client to call Sen. Baucus "to advise them of what Dr. Margaris had said to me"; call from client regarding notices from IRS and client in to sign tax returns to comply with IRS (1.38 hrs.); call from client saying he wants me to surrender all of his assets and attempt to secure his full homestead exemption of $40,000, plus to leave the area (.83 hrs.); call from client (1.2 hrs.); call to IRS re: filing of 1990 tax returns; calls to Dan McKay; attempts to call client with no success (.34 hrs.).

The above billing statement is merely representative of the many entries which are calls to client and attention to the client's welfare and interests, not interests which benefit the estate. About the only entries which may possibly be argued to allow a fee as an administrative expense in the Chapter 7 proceeding are the two entries on 10/17/96 for travel to and attendance at the § 341 first meeting of creditors.

Yet it is clear the Applicant was not employed by the Chapter 7 Trustee for any legal services, and thus is not a professional employed by the estate under section 327 of the Code. The Debtor's and his counsel's attendance at the § 341 meeting is mandated by that section of the Code and F.R.B.P.2003(b)(1). Moreover, the Debtor has the duty under section 521(3) to cooperate with the Trustee to enable the Trustee to perform his duties. The Applicant's services under Chapter 7 were thus performed on behalf of the Debtor in satisfaction of the duties imposed upon the Debtor under the Bankruptcy Code and Rules.

*In re Kohl (Keate v. Miller, Trustee)*, 95 F.3d 713, 714 (8th Cir.1996) holds:

Under 11 U.S.C. § 330(a)(1) of the Bankruptcy Code, a court can award debtor's attorney compensation only for actual and necessary services. In addi-

tion, "an attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate." *In re Reed,* 890 F.2d 104, 106 (8th Cir.1989). "This rule is based upon the legislative history of Bankruptcy Code section 330(a) and the unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of creditors." *In re Hanson,* 172 B.R. 67, 74 (9th Cir. BAP 1994).

In *Hanson, supra,* the chapter 7 debtor's counsel applied for payment of fees from the estate. The court elaborated in discussing authorities which allowed fees incurred in carrying out the provisions of the Act:

> Thus, the current majority rule under the Code which requires that in order to be compensable from estate funds, services rendered by the debtor's attorney must benefit the estate, " 'carr[ies] over the near unanimous view of prior Bankruptcy Act cases that, as a matter of law, attorneys may recover fees from the estate only if their labors actually benefited the estate.' " [*Federal Deposit Insurance Corporation v. Grimm (In re Grimm),* 156 B.R. 958, 962 (E.D.Va. 1993)] (alteration omitted) (quoting *In re Ryan,* 82 B.R. 929, 931 (N.D.Ill.1987)).

*Hanson,* 172 B.R. at 71.

*Hanson* further defined the considerations for determining whether services benefit the estate as,

> (1) whether the debtor's attorney's actions duplicated the duties of the trustee or the trustee's counsel under 11 U.S.C. § 1106; [citations omitted] (2) whether the services have in fact, obstructed or impeded the administration of the estate; [citations omitted] and (3) whether the debtor attorney's actions are consisted with the debtor's duties under 11 U.S.C. § 521. *Pfeiffer v. Couch (In re Xebec),* 147 B.R. 518, 523 (9th Cir. BAP 1992).

*Hanson,* 172 B.R. at 73.

Of course the burden of demonstrating entitlement to such fees is on the applicant. Here, the Applicant failed to point out one instance where his services specifically benefitted the estate except to argue that he was a "buffer" between the antagonistic Debtor and the Trustee. It is only on this vague treatise does Caughron have any hope to recover fees since *Pfeiffer* states, "the services rendered by the debtor's attorney which comply with the debtor's duties under § 521 should be presumed to be reasonable, necessary and therefore, compensable under § 330." *Pfeiffer,* 147 B.R. at 524.

The daily entries, fairly judged for Caughron's benefit, belie any substantial service to the Trustee by Debtor or his counsel which benefitted the estate, and none was produced at the hearing. Only two entries relate to any activity by Caughron with the Chapter 7 Trustee. Entries on 6/9/99 and 6/10/99 state:

> Met briefly with Trustee Ross Richardson. He suggested a settlement of all remaining issues. Call to Sheila [Mahaffey's daughter] to discuss possible settlement (.17 hr. @ $18.70).

Next, entry 6/11/99 states:

> "Call to Sheila re discussion with Ross Richardson on Wednesday concerning settlement, and discussed strategy for motion to dismiss bankruptcy."

> 7/15/99: Meeting with Marie and review of letter to Sheila. Instructions to draft motion to withdraw.

> 7/23/99: Call from Sheila Chase re my withdrawal.

No settlement was ever filed with the Court, and on June 18, 1999, the Chapter 7 Trustee filed an application to employ a title company to search property records regarding the estate real property, the residence and shop, for which the title company was paid $400.00. Docket entries 139, 140. As stated above, Caughron filed his withdrawal from the case on July 21, 1999, because of "fundamental differences between Sheila [Debtor's daughter] and [Mr. Caughron]."

In fact, the bankruptcy file shows (1) the Debtor's counsel filed motions to disqualify the former trustee, requiring a substitute trustee to be appointed; (2) filed a motion to extend time to appeal conversion to Chapter 7; and (3) filed a notice of revocation of power of attorney given by the Debtor to Caughron; all of which were obstructions to the administration of this case. Further, the file reflects routine action by the Trustee to sell assets and employ professionals, and take action to correct long standing environmental problems created on the Debtor's property— none of which activity are included in Caughron's application as being in aid of the Chapter 7 Trustee's duties. It is curious, indeed, that on February 17, 1999, the Chapter 7 Trustee filed a status report concerning the removal of contamination from the Debtor's site and included that information supplied by the Debtor about the existence of an old sewer system led to discovery of the drain pipe. The environmental report states Mahaffey was on site during the phase of the work when contaminated soils were removed on October 14, 1998, and the drain pipe discovered. The only billing entry submitted by Caughron in this period is one entry on 10/16/98 reading "call from client". So Mahaffey may have cooperated with the Trustee as he was obligated to do under § 521, but Caughron had no involvement in the matter. *Pfeiffer v. Couch, supra.*

### CONCLUSION

All of the above having been considered, the application for award of professional fees by R. Clifton Caughron as administrative expenses from the Chapter 7 estate is denied. First, the applicant has failed to sustain his burden of proof that his legal services benefitted the estate. Second, all of the so-called "buffer" activity which is claimed to have benefitted the estate simply does not show through in the application. This is not a case where the Chapter 7 Trustee's actions caused loss or expense which resulted in Caughron having to incur expense as a result of the administration of the estate. *See, In re Met–L–*

*Wood,* 103 B.R. at 976. Thus, the fee application can be construed only one way—all the legal activity by the applicant was for and on behalf of the Debtor's probate and not the estate.

IT IS ORDERED the objections of the Office of U.S. Trustee to Final Application for Professional Fees and Costs filed by R. Clifton Caughron on March 1, 2000, are sustained and the application is denied as an administrative expense in this Chapter 7 case.