**In re William Henry REDDING and Alice Patricia Redding, Debtors.**

**Bankruptcy No. 98–30985–1.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Dec. 21, 1999.

David E. Schroeder, Springfield, MO, James B. Fleischaker, Joplin, MO, for debtors.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This matter comes before the Court at ·this time on the Applications for approval of compensation filed by two attorneys for the Debtors, the Objections filed by the Panel Trustee to those Applications, and the Panel Trustee's Motion for Disgorgement of Attorney's Fees. The case presents, apparently for the first time in this District, the question of whether 11 U.S.C. § 330(a)(1), after its amendment in 1994, permits the payment of a Chapter 7 debtor's attorneys' fees out of the bankruptcy estate. For the reasons discussed below, the Court answers that question in the negative and will deny approval of the fee applications and order the disgorgement of payments received by the attorneys involved.

The Court has jurisdiction of these matters under 28 U.S.C. §§ 157(a) and (b)(1) and 1334.

## FACTUAL BACKGROUND

William Henry Redding and Alice Patricia Redding ("Debtors" or "Reddings") filed a "quick file" Chapter 13 Petition on November 5, 1998, in order to forestall a foreclosure sale scheduled that same afternoon of an apartment complex owned by the Reddings. The "quick file" petition was filed on behalf of the Debtors by David E. Schroeder ("Schroeder"), an experienced bankruptcy attorney with offices in Springfield, Missouri. With the initial Petition, Schroeder filed a Disclosure of Compensation form indicating that he had agreed to accept, and had been paid, $3,000.00 to represent the Debtors in the bankruptcy proceedings. Schroeder attached to the disclosure form a copy of an Attorney Employment Agreement signed by himself and the Debtors which provided, among other things, that the $3,000.00 fee did not include representation or services that might be required in any contested or disputed matter that might arise after the filing of the bankruptcy petition. Schroeder did not file an application at that time seeking approval for payment of any fees in excess of $1,000.00, as required by this Court's Local Rule 2016-1.[1]

Shortly after the initial Petition was filed, Schroeder apparently determined that the Debtors could not utilize Chapter 13 to reorganize their debts and that Chapter 11 would better enable them to restructure their debts, particularly their debts to Frank and Dorothy Dell ("Dells"), who held the mortgage on the Debtors' apartment complex in Cassville, Missouri. Accordingly, Schroeder filed on January 21, 1999, an Application to convert the Chapter 13 proceedings to Chapter 11. The Court entered an Order of Conversion on January 22, 1999. On February 18, 1999, approximately a month after the conversion to Chapter 11, Schroeder filed a Petition for Authority to Employ Attorney, and an Order approving Schroeder's employment in the Chapter 11 case was entered on February 23, 1999.

Battle was soon joined with the Dells and their attorney, Bruce A. Copeland ("Copeland"). On February 22, 1999, Copeland filed on behalf of the Dells a "Motion to Modify Stay, for Adequate Protection, to Condition Debtors' Use of Property and Operation of Business, or to Convert" ("Motion to Modify Stay"). On February 26, 1999, Copeland filed a Notice to take the depositions of both Debtors. The Notice directed the Debtors to produce a substantial quantity of documents, as specified in 33 numbered paragraphs. Shortly thereafter, on March 5, 1999, the Debtors filed a Motion to dismiss their Chapter 11 proceeding. At a hearing on March 18, 1999, on the Motion to Modify Stay, Schroeder and Copeland agreed that the case should be converted to Chapter 7, and that the Debtors' Motion to Dismiss could be denied. Pursuant to this agreement, on March 29, 1999, the Court entered an Order converting the Chapter 11 proceeding to Chapter 7 and

---

1. Local Rule 2016–1 provides:

A. **Prepetition Retainers.** The disclosure of amount of retainer by debtor's counsel pursuant to § 329 and Bankruptcy Rule 2016(b) shall be filed with the petition and served on the U.S. Trustee and any trustee. All professionals shall deposit retainers, whether received from debtor or any other source, in a trust account, *and withdraw and apply funds only after a fee application and order.* (emphasis added)

B. **When Application Unnecessary.** If counsel's total fee in a case is $1,000 or less, the disclosure of fee in initial filings is sufficient and *it is unnecessary to file any itemized application.* . . .

\*\*\*\*

D. **Applications Over $1,000.** For applications over $1,000, in addition to service in Paragraph A, applicant shall serve on all creditors a notice . . . stating: the amount of fees and expenses sought; period covered; number of previous applications filed; amounts of compensation previously sought and allowed; original retainer and balance; that parties have 20 days to object, if no objections are filed the Court may enter an order, and if objections are filed the Court may set a hearing.

denying the Debtors' Motion to Dismiss. Then, at a hearing on April 22, 1999, the Debtors agreed that the automatic stay of 11 U.S.C. § 362 could be lifted to allow the Dells to move ahead with foreclosure on the apartment complex.

With the conversion to Chapter 7, the United States Trustee appointed Norman E. Rouse as the Panel Trustee in the case.

In a supplementary pleading filed on March 12, 1999, Copeland (the attorney for the Dells) alleged that the Debtors had failed and refused to comply with the Bankruptcy Code and Rules in numerous respects, such as failing to attend the first § 341 meeting, failing (or refusing) to testify at the rescheduled § 341 meeting, failing to file a Chapter 13 Plan and failing (or refusing) to appear for Rule 2004 examinations and produce documents requested. The Debtors never denied these allegations. In fact, no reorganization plan, be it Chapter 13 or Chapter 11, was ever filed by the Debtors.

On July 16, 1999, the Court entered its standard Order granting a discharge to the Debtors in their Chapter 7 proceedings, but that did not end the fighting between the Debtors and the Dells. On July 29, 1999, James B. Fleischaker, a Joplin attorney who is not a regular practitioner in the bankruptcy court, entered his appearance on behalf of the Debtors for the limited purpose of representing the Debtors in opposing a Proof of Claim that had been filed by the Frank and Dorothy Dell Family Trust.[2] At the same time, Fleischaker filed an Objection to the Dells' Proof of Claim. This claim was for $172,-674.76 for the unsecured portion of the Debtors' remaining debt to the Dells after the Dells had completed foreclosure on the apartment complex property. In their Objection to this claim, the Debtors sought rescission of their notes with the Dells and requested various set-offs and credits against the Dells' claim. In short, the

Debtors sought to defeat the Dells' claim in its entirety. The Dells, by their attorney, Copeland, filed a Response to the Debtors' Objection, in which the Dells asserted numerous affirmative defenses, including bad faith and estoppel because of the Debtors' refusal to respond to discovery requests and follow the rules of the Court in their Chapter 13 and Chapter 11 cases.

Fleischaker and Schroeder then filed a Motion asking this Court to abstain from hearing the Debtors' Objection to the Dells' Proof of Claim and asking, instead, that they be permitted to pursue their objections in state court. The Court, after a hearing, denied the Motion on August 31, 1999. Soon thereafter, on September 13, 1999, Schroeder filed a Motion on behalf of the Debtors asking the Court to restrain the Trustee, Mr. Rouse, from collecting a monthly payment of $597.00 on a promissory note that was property of the bankruptcy estate. The Debtors argued that the note payment was necessary for their support and for maintenance of the properties remaining in the bankruptcy estate. After a hearing on September 23, 1999, the Court denied the Debtors' Motion and directed them to turn over all note payments to the Trustee and directed the Trustee to make all necessary mortgage and utility payments on the properties in the bankruptcy estate.

It was not until after this hearing on September 23, 1999, that Mr. Fleischaker, at the Court's direction, filed an Application to be employed as special counsel for the Debtors. In his Application, Fleischaker stated that the Debtors had agreed to pay him an hourly fee of $125.00, but he did not disclose whether the Debtors had paid him any fees or any retainer prior to the filing of the Application. The Court entered an Order on September 27, 1999, authorizing Fleischaker's employment.

---

**2.** For the sake of convenience, we will refer to this claim as being filed by the Dells, recognizing that there is little practical distinction to be made between the Dells personally and the Dells as trustees of their family trust.

On November 2, 1999, Fleischaker filed an Application for Payment of Attorney Fees, in which he revealed for the first time that the Debtors had paid him $2,000.00 in fees on May 13, 1999, $1,901.96 on June 30, 1999, and $512.87 on August 19, 1999. Fleischaker also disclosed that he was holding $2,000.00 in his escrow account for anticipated payment of his October billing. These payments totaled $6,414.83, most of which were received by Fleischaker well prior to the time he filed his Application seeking the Court's approval to be hired as special counsel for the Debtors, and all of which were received prior to the filing of his fee application. Fleischaker has not, at any time, filed a statement of compensation as required by 11 U.S.C. § 329(a) or Federal Rule of Bankruptcy Procedure 2016(b).

On this same date, November 2, 1999, the Trustee filed a Motion for Disgorgement of Attorney's Fees ("Motion for Disgorgement") directed at the fees that had been paid to Schroeder and Fleischaker. In the Motion, the Trustee alleged that he had learned, through the Rule 2004 examination of Mr. Redding, that Mr. Redding had transferred $20,911.04 to his stepson (the son of Debtor Alice Patricia Redding) in Florida within the year immediately preceding the bankruptcy filing. According to the Trustee, the Reddings testified that the funds transferred were intended as a wedding gift for their son/stepson and that the transfers were absolute, admitted that they had not disclosed the transfers to the son/stepson in their bankruptcy statement of financial affairs or to the Trustee at the § 341 meeting (though they were specifically asked about transfers to relatives), that the son/stepson had given Mr. Redding at least $15,000.00 in cash in several installments since the $20,911.04 had been transferred to the son/stepson, and that that money had been used by Mr. Redding to pay the fees of Schroeder and Fleischaker post-petition.

Schroeder filed a Response to the Trustee's Motion for Disgorgement on November 10, 1999, but Fleischaker has not filed any response. In his Response, Schroeder acknowledged that he had received $11,011.40 in payments from the Debtors, including the $3,000.00 which he received at the time of the bankruptcy filing in November 1998. Schroeder admitted that he had violated Rule 2016(b) by not disclosing all payments subsequent to the first $3,000.00 he received. Schroeder stated that he had understood that the payments being made to him—most of which were in cash, incidentally—were not coming from assets of the bankruptcy estate, but that if they had come from assets of the estate, they were "innocently received."

Schroeder did not file an Application for approval and payment of his attorney's fees until November 30, 1999. In that Application, he sought approval for a total of $14,715.00 in fees and $1,001.96 in expenses, for a total of $15,716.96. Of that amount, Schroeder stated that he had previously been paid a total of $11,011.40, including the initial $3,000.00 retainer. Also on November 30, Schroeder filed what he called a Supplemental Statement of Compensation of Attorney for Debtors in which he enumerated the payments he had received from the Debtors—the initial $3,000.00 in November 1998, $4,500.00 on May 28, 1999; $761.40 on August 20, 1999, and $2,750.00 on October 6, 1999. All of these payments were made after Schroeder sent invoices to the Debtors for the services he had rendered in the bankruptcy proceedings, post-petition, and before he had sought Court approval for the fees and expenses.

There is no indication that Fleischaker notified all creditors of his request for the allowance of attorney's fees, as is required by Local Rule 2016–1.D, although it appears that Schroeder provided the required notice when he filed his Application on November 30.

The Trustee's Motion for Disgorgement was scheduled for hearing on November 15, 1999. At that time, the Court conferred in chambers with all counsel in-

volved, and counsel stipulated that the Court could consider and rule the Motion for Disgorgement and the fee applications on the basis of the pleadings and the parties' exhibits, without the necessity of hearing further evidence. Since that time, both the Trustee and Copeland have filed-written objections to allowing payment of the attorneys' fees from the bankruptcy estate (although they have not objected to the amounts and reasonableness of the fees or to their payment by the Debtors out of their personal, non-estate funds).

### DISCUSSION

The compensation of professional persons employed in bankruptcy cases is largely governed by 11 U.S.C. § 330. This case presents the question, raised for the first time in this Court, of whether the attorneys for Chapter 7 debtors may be compensated from the bankruptcy estate for services they have rendered to the Chapter 7 debtors, in light of the 1994 amendment to § 330(a)(1), which now appears to prohibit such compensation.

### A. The provisions of 11 U.S.C. § 330(a)(1)

Section 330(a)(1), as presently written, provides:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) (1999).

Prior to the enactment of the Bankruptcy Reform Act of 1994, P.L. No. 103–394, 108 Stat. 4106 (1994) ("the Reform Act"), section 330(a) provided statutory authority for a bankruptcy court to award compensation to a Chapter 7 debtor's attorney. The statute prior to passage of the Reform Act read:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, *or to the debtor's attorney*

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title;

11 U.S.C. § 330(a) (1993) (emphasis added).

Controversy has arisen over whether Congress intended to remove the words *or to the debtor's attorney* or whether the words were mistakenly removed from the statute, and whether the removal of those words has rendered the statute ambiguous, so as to be subject to further judicial interpretation. The Fifth Circuit Court of Appeals, and the majority of bankruptcy courts to consider the issue, have found the amended section clear and unambiguous in its elimination of the Chapter 7 debtor's attorney from the listing of those who may be awarded compensation and have therefore held that the Chapter 7 debtor's attorney may not be awarded compensation payable from the funds of the bankruptcy estate. While acknowledging the awkward grammatical construction brought about by the 1994 amendment, the Fifth Circuit nevertheless found § 330(a)(1) clear and unambiguous, stating:

We decide the issue before us bound by our conventions of statutory construction, even though common sense might lead the lay observer to conclude that a different result is perhaps more appropriate.

\*　　\*　　\*　　\*　　\*　　\*

In this case, we are faced with a statute which is clear on its face. It excludes attorneys from its catalog of professional officers who may be compensated for their work after the appointment of a Chapter 11 trustee. Although the legislative history and, indeed, a brief syntactical evaluation of the clause at issue suggest that Congress inadvertently neglected to include attorneys, our canons of construction do not require—nay, do not permit—us to consider these exogenous sources when the statute is clear textually on its face.

*Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.)*, 157 F.3d 414, 424–25 (5th Cir.1998).[3]

■ In finding § 330 clear and unambiguous, the courts have generally declined to examine the legislative history in order to determine legislative intent. As Justice Scalia has written in interpreting the Bankruptcy Code: "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 566, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S.

235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

At the opposite end of the spectrum, the Ninth Circuit Court of Appeals, in *United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Services, Inc.)*, 195 F.3d 1053 (9th Cir.1999), found the statutory language ambiguous. The Ninth Circuit examined the legislative history of the Reform Act in some detail, concluded that the omission of the debtor's attorney from the listing in the first portion of § 330 was a mistake and not intended by Congress, and held that the debtor's attorney in that case could be paid out of the bankruptcy estate. In making that determination, the Ninth Circuit joined the Second Circuit (*In re Ames Department Stores, Inc.*, 76 F.3d 66 (2nd Cir.1996)), Collier on Bankruptcy,[4] and at least two bankruptcy courts.[5]

■ There is no dispute that the words, *or to the debtor's attorney*, were eliminated from § 330(a)(1) when it was amended in 1994. There is also no dispute that the language of the statute is grammatically awkward and perhaps incorrect as it now stands. However, this Court believes that the Supreme Court was serious when it stated that courts "must presume that a legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). This Court, like the Fifth Circuit, is extremely reluctant to write back into a statute words that the Congress has removed, knowingly or otherwise. The dissent in *In re Century*

---

3. Bankruptcy courts that have reached a similar conclusion as the Fifth Circuit include *In re Skinner*, 240 B.R. 225 (Bankr.W.D.Va. 1999); *In re Johnson*, 234 B.R. 671 (Bankr. S.D.Tex.1999); *In re Fassinger*, 191 B.R. 864 (Bankr.D.Or.1996); *In re Friedland*, 182 B.R. 576 (Bankr.D.Colo.1995); *and In re Kinnemore*, 181 B.R. 520 (Bankr.D.Idaho 1995).

4. Collier suggests that courts should construe the omission of the debtor's attorney from § 330 as unintended because of the lack of legislative history to support such a drastic departure from the previous version of the

statute. 3 COLLIER ON BANKRUPTCY ¶ 330, LH[5] at 330–74 to 330–76 (15th ed. rev.1999). This Court simply cannot accept this reasoning as the basis for restoring words to a statute when those words have been quite clearly taken out of the statute by Congress.

5. Bankruptcy courts finding that the elimination of the debtor's attorney from the statute in 1994 was a mistake include *In re Bottone*, 226 B.R. 290 (Bankr.D.Mass.1998), and *In re Miller*, 211 B.R. 399 (Bankr.D.Kan.1997).

*Cleaning Services, Inc., supra,* points out that the elimination of the phrase at issue was brought to the attention of the House of Representatives before final passage of the Reform Act, yet the House nonetheless approved the amendment eliminating the words, "or to the debtor's attorney." *In re Century Cleaning Services, Inc.,* 195 F.3d 1053, 1063. Furthermore, it has been more than five years since the Reform Act was passed, but Congress has not taken steps to restore the language to the statute that the Ninth Circuit and others have concluded was inadvertently removed. Surely, if Congress had indeed made a mistake in eliminating the phrase from the statute, it would have acted to correct that mistake, but it has not done so. That suggests to this Court that the elimination of the provision was not a mistake or inadvertent, as the Ninth Circuit has found, but was intentional. Perhaps the elimination of the phrase was, indeed, inadvertent, but a great deal of speculation is required to reach that conclusion. This Court is not prepared to go that far. An equally persuasive argument could be made that Congress intended to remove the debtor's attorney from the statute and simply failed to do the housekeeping necessary to clean up the rest of the statute in compliance with that removal. Also, the Reform Act made special provisions in § 330(a)(4)(B) for the awarding of fees in Chapter 12 and 13 cases, at the same time it eliminated the provision for awarding fees out of the bankruptcy estate to Chapter 7 debtors' attorneys. Perhaps Congress did intend to make a distinction between the payment of attorneys' fees in reorganization cases (Chapters 12 and 13) and liquidation cases (Chapter 7).

For all these reasons, we conclude that a Chapter 7 debtor's attorney may not be awarded compensation from the bankruptcy estate, pursuant to the provisions of § 330(a)(1), as it is presently written.

Based on the foregoing discussion, the Court finds and concludes that Schroeder and Fleischaker are not entitled to be awarded their attorney's fees out of the Chapter 7 bankruptcy estate in this case.

**B. Counsel's noncompliance with statutes and rules**

Even assuming that § 330(a)(1) would allow an award of attorneys' fees from this bankruptcy estate to Schroeder and Fleischaker, which we have determined it does not, the Debtors' attorneys in this case would not be entitled to an award of fees in any event because of their failure to comply with the requirements of the statute and the Bankruptcy Rules, as well as this Court's Local Rules, and for the further reason that the services provided by the attorneys were for the benefit of the Debtors and did not benefit the Chapter 7 bankruptcy estate.

First, attorneys representing debtors must comply with 11 U.S.C. § 329 and its implementing rule, Rule 2016. Section 329 provides:

**Debtor's transactions with attorneys**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.

Rule 2016(b) provides:

**(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Fed.R.Bankr.P. 2016(b).

■■■ Secondly, an attorney who is employed to represent a debtor must give notice to creditors and receive court approval prior to being compensated from the funds of the bankruptcy estate. 11 U.S.C. § 330(a)(1); Bankruptcy Rule 2016; Local Rule 2016–1; *Lavender v. Wood Law Firm*, 785 F.2d 247, 248 (8th Cir. 1986). "Without such prior approval, ordinarily subsequent applications for fees should be denied and the funds received should be ordered returned to the estate." *Id.*

■■■ In this case, as we have detailed above, both Schroeder and Fleischaker have disregarded and violated the statutes and rules with impunity, at least to this point. Schroeder initially filed on November 5, 1998, along with the "quick file" Chapter 13, a statement of disclosure disclosing that he had received $3,000.00 from the Debtors. This disclosure appears to comply with the dictates of Bankruptcy Rule 2016(b), but Schroeder did not comply with this Court's Local Rule 2016–1, which requires attorneys receiving a retainer of more than $1,000.00 to file an application with the Court and provide notice to creditors, giving them an opportunity to object to the fees being requested in excess of $1,000.00. Counsel is supposed to place all amounts in excess of $1,000.00 in escrow until the Court approves the fee. Schroeder has not done that in this case.

It was not until November 30, 1999, that Schroeder filed an application for approval and payment of his fees and expenses and served notice on the creditors. The application and notice indicated that Schroeder had been paid $11,011.40, although only $3,000.00 of that amount had previously been disclosed to the Court in the initial disclosure of compensation. Schroeder did not comply with the requirements of Rule 2016(b) when he received payments from the Debtors on May 28, August 20, and October 6, 1999; that rule requires that a supplemental disclosure statement be filed and sent to the United States Trustee "within 15 days after any payment or agreement not previously disclosed." Fed. R.Bankr.P. 2016(b).

Fleischaker did no better. Apparently, Fleischaker was retained by the Debtors to represent them in their fight against the Dells in May 1999, but he did not enter his appearance in the case until July 29, 1999, and he did not file any type of disclosure statement, as required by § 329(a) and Rule 2016(b). He did not disclose that he had been paid $3,901.96 by the Debtors for services he had rendered in May and June. Fleischaker was reminded by the Court at a hearing on September 23, 1999, that he should file an application to be employed by the Debtors, and he subsequently did file such an application. However, once again he did not disclose that he had already received several thousand dollars from the Debtors. At long last, on November 2, 1999, Fleischaker filed a fee application in which he detailed, for the first time, that he had already been paid $4,414.83 by the Debtors and that he was holding in his escrow account an additional

$2,000.00 to be applied to his billings through October 30, 1999.

This Court cannot and will not condone such blatant disregard for the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Rules of this Court. Even if § 330(a)(1) allowed the attorneys for the Chapter 7 debtors to be paid their fees and expenses out of the bankruptcy estate, the applications filed by the attorneys in this case would be denied because of the attorneys' repeated and blatant violations. These were not mere technical breaches. Except for Schroeder's initial disclosure statement, there has been a total disregard of the statutes and rules by the attorneys for the Debtors in these proceedings.

■ Additionally, these fee applications cannot be approved because the services provided by the attorneys did not benefit the bankruptcy estate and were not requested by the Chapter 7 Panel Trustee, Mr. Rouse. It is well established in this Circuit (prior to the 1994 amendments) that "an attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate." *In re Reed,* 890 F.2d 104, 106 (8th Cir. 1989). *See also, Keate v. Miller (In re Kohl),* 95 F.3d 713, 714 (8th Cir.1996) ("This rule is based upon the legislative history of Bankruptcy Code section 330(a) and the unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of creditors.") (quoting *In re Hanson,* 172 B.R. 67, 74 (9th Cir. BAP 1994)). Little discussion is required on this point. From Day One, these bankruptcy proceedings have revolved around the Debtors' efforts to prevent the Dells from obtaining possession of the apartment complex on which the Dells had a lien and then, after the Dells had obtained a lifting of the automatic stay and foreclosed on the property, to prevent the Dells from being paid on the deficiency balance they asserted. Fleischaker was hired for these express purposes, and most of

Schroeder's efforts throughout the proceedings were also directed at these goals. Although Fleischaker argues that some of the actions he took benefitted the Trustee and the bankruptcy estate, any such benefits were merely incidental and, so far as the Court can see, were not undertaken for the purpose of assisting the Trustee. Rather, this case has been marked throughout by the animosity between these parties and the Debtors' almost total lack of cooperation with the Dells and the Trustee and lack of compliance with the rules, as set out hereinabove. It would be grossly unfair to the Dells, who now have an agreed-to claim of $198,672.40 and are by far the largest creditors of the Reddings, to allow payment of the Debtors' attorneys' fees out of the funds of the bankruptcy estate. Whatever funds may be generated by the Trustee should be distributed to the creditors, not to the Debtors' attorneys.

### C. Disgorgement of payments received

This brings us, then, to the question of what must be done with the fee payments received by the Debtors' attorneys.

■ It is well established that bankruptcy courts have broad and inherent authority to deny any and all compensation when an attorney fails to comply with the provisions of §§ 327, 329, 330 and 331. *Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1045 (9th Cir.1997). As pointed out earlier, the Eighth Circuit Court of Appeals has held that, where a debtor's attorney has failed to comply with the statute and the rules, subsequent fee applications *"should* be denied and the funds received *should* be ordered returned to the estate." *Lavender v. Wood Law Firm,* 785 F.2d 247, 248 (8th Cir.1986) (emphasis added). It is worthy of note that the Eighth Circuit used the word *should* and not the word *may,* thereby giving a strong indication that disgorgement of the fees received is the expected and proper remedy to be applied. *See also, In re Downs,* 103 F.3d 472, 479 (6th Cir.1996) ("[T]he bankruptcy

court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."); *Matter of Prudhomme*, 43 F.3d 1000, 1003 (5th Cir.1995) ("[T]he court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure."); *In re Westside Creek Limited Partnership*, 93 B.R. 177, 180–81 (Bankr.E.D.Ark.1988) ("Failure of attorney to comply with the requirement of the Bankruptcy Code to obtain prior court approval is a basis for ordering the estate to be reimbursed for fees improperly received.").

 In this case, Schroeder has been paid $11,011.40 by the Debtors, but only $1,000.00 of that was received by Schroeder in compliance with the statutes and rules. Although Schroeder initially disclosed that he had been paid $3,000.00 pre-petition by the Debtors, he never sought court approval for the excess over $1,000.00, as is required by this Court's Local Rule 2016–1, until a year later and after he had applied the excess to payment of his fees. Therefore, all amounts over $1,000.00 (namely, $10,011.40) were received without appropriate court approval and without prior disclosure to the Court or to creditors. Fleischaker has received $6,414.83 without court approval and without prior disclosure to the Court or to creditors. The Court recognizes that disgorgement can be, and often is, a harsh penalty for the lawyer, but it is, unfortunately, the price the attorney must pay when he or she does not follow and abide by the provisions of the Bankruptcy Code and Rules. Because of Schroeder's and Fleischaker's egregious violations of the statutes and rules, the appropriate sanction is denial of the fees and expenses

requested, and the Court will order them to disgorge the fees they have received without Court approval.

The parties have raised the question of whether the money paid to Schroeder and Fleischaker was property of the estate. The Court has little doubt that it was. A persistent investigation by the Trustee uncovered the fact that the Debtors had cashed a certificate of deposit in the amount of $20,911.04 in early August 1998, less than three months prior to the bankruptcy filing, and that at least that amount of money was transferred to the Debtors' son/stepson in Florida (allegedly as a wedding gift). This transfer of funds was not disclosed by the Debtors in their statement of financial affairs. It took the Trustee three Rule 2004 examinations to ferret out the fact that the total sum of approximately $21,000.00 had been transferred to the son/stepson and that the son/stepson had then retransferred at least $15,000.00 to the Debtors for the payment of their attorneys' fees post-petition. The Debtors testified that they had no records of the various transfers and retransfers, all of which were apparently made in cash, and most if not all of the payments to the attorneys were made in cash, apparently in an attempt to conceal the transactions from the Trustee and creditors. Under these circumstances, there can be little doubt that the cash paid to the attorneys was property of the bankruptcy estate which had been concealed from the Court and the Trustee. To the extent that the son/stepson retains any of the cash transferred to him in the year preceding the bankruptcy filing, the Trustee is strongly encouraged to pursue an appropriate action to recover that money.

Finally, the Trustee has not objected to the amounts or the reasonableness of the fees charged the Debtors by their attorneys for the services rendered, and has not objected to payment of those fees (and expenses) by the Debtors, so long as estate funds are not used. Although it would appear to the Court that the total amount

of fees charged the Debtors is excessive, particularly in light of the meager results obtained, the Court will approve the fees and expenses for payment by the Debtors out of non-estate funds.

Based on the forgoing discussion, it is

**ORDERED** that the Application for fees and expenses filed by David E. Schroeder be and is hereby approved to the extent of $1,000.00 and is hereby denied as to the balance, and David E. Schroeder is hereby directed to disgorge and pay over to the Chapter 7 Trustee immediately the remainder of the payments received in the sum of $10,011.40. It is

**FURTHER ORDERED** that the Application for fees and expenses filed by James B. Fleischaker be and is hereby denied, and James B. Fleischaker is hereby directed to disgorge and pay over to the Chapter 7 Trustee immediately all payments received from the Debtors in the sum of $6,414.83. It is

**FURTHER ORDERED** that the Objections filed by the Trustee and the Dells to the fee applications and the Trustee's Motion for Disgorgement are hereby sustained as set out hereinabove.

**SO ORDERED.**